# **EXHIBIT 2**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| DEXTERITY SURGICAL, INC. | § | CASE NO. 04-35817 |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

---

| | | |
|---|---|---|
| JOSEPH MYERS, AS COMMITTEE REPRESENTATIVE OF DEXTERITY SURGICAL, INC., | § § § | |
| | § | |
| PLAINTIFF, | § § | |
| | § | |
| v. | § | ADV. PROCEEDING NO.  06-03352 |
| EDWARD WECK INCORPORATED, d/b/a WECK, TELEFLEX INCORPORATED, WECK CLOSURE SYSTEMS, LLC, AND PILLING WECK INCORPORATED, | § § § § § | |
| | § | |
| DEFENDANTS. | § | |

---

## COMMITTEE REPRESENTATIVE'S MOTION
## FOR APPROVAL OF COMPROMISE AND SETTLEMENT
## AGREEMENT BETWEEN EDWARD WECK INCORPORATED d/b/a
## WECK, TELEFLEX INCORPORATED, WECK CLOSURE SYSTEMS, LLC,
## PILLING WECK INCORPORATED AND THE COMMITTEE REPRESENTATIVE

### NOTICE UNDER BANKRUPTCY LOCAL RULE 9013(b)

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 20 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

ACCORDINGLY, YOU ARE STRONGLY ADVISED TO RESPOND BEFORE IN ORDER TO PRESERVE YOUR RIGHTS.  REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Joseph Myers, as the representative (the "Committee Representative") of the Unsecured Creditors Committee of Dexterity Surgical, Inc. (the "Debtor"), files this Motion for Approval of Compromise and Settlement Agreement Between Edward Weck Incorporated d/b/a Weck, Teleflex Incorporated, Weck Closure Systems, LLC, Pilling Weck Incorporated (collectively, the "Defendants") and the Committee Representative pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Motion"). In support thereof, the Committee Representative respectfully states as follows:

## PRELIMINARY STATEMENT

1.     The Plan (defined below) vests the Committee Representative with the authority to prosecute all actions on behalf of the Debtor's estate, specifically including the D&O Suit (defined below), as well as avoidance actions and any other actions that are property of the estate. The Plan also deems the Committee Representative the proper plaintiff in the D&O Suit, a pre-petition derivative suit brought in Texas state court. As a result, the Committee Representative is vested with the authority to prosecute both the D&O Suit and Adversary Proceeding for the benefit of the Debtor's estate and creditors. In exercising this authority, the Committee Representative reached a settlement with the Defendants resolving both the D&O Suit and Adversary Proceeding. The consensual resolution provides a substantial return of funds to the estate. In so doing, the Committee Representative saved the estate the cost of potentially litigating two separate actions in two separate forums. Accordingly, the Committee Representative asserts that the Settlement (defined below) is reasonable and should be approved pursuant to Federal Rule of Bankruptcy Procedure 9019.

2

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of Debtor's Chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).

## FACTS

3.     On April 19, 2004, (the "Petition Date"), the Debtor, a Delaware corporation, filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

**A.     The Adversary Proceeding and Settlement**

4.     On April 18, 2006, the Committee Representative filed a Complaint in the above-captioned adversary proceeding (the "Adversary Proceeding"), seeking, *inter alia*, the return of certain alleged transfers of property from the Debtor to the defendants pursuant to Chapter 5 of the Bankruptcy Code in the amount of $337,659.00.

**B.     The D&O Suit**

5.     Prior to the commencement of the Debtor's chapter 11 case, on April 29, 2002, certain shareholders (the "D&O Plaintiffs") of the Debtor filed a complaint (the "D&O Complaint") against Teleflex Incorporated and former and current officers and directors of the Debtor in the 166th Judicial District, Bexar County, Texas, styled *Surgical Vision I, Inc. v. Teleflex, Inc., et al.*, 2002-CI-06331 (the "D&O Suit"), alleging, *inter alia*, that the Debtor's former and current directors and officers engaged in a conspiracy to defraud minority shareholders, breached their fiduciary duties, falsified corporate minutes, issued false and misleading public filings and press releases, and bribery.  A copy of the Second Amended Petition is attached hereto as Exhibit A.

3

6.     The D&O Plaintiffs subsequently added the Debtor as a defendant; however, the Debtor was dismissed shortly after the Petition Date.  Despite this dismissal, several of the remaining defendants assert that the Debtor owes them an indemnity obligation as a result of their positions as former officers and directors thereof.  Indeed, this indemnity claim was specifically recognized in the filings with the Bankruptcy Court.  *See* Disclosure Statement at p. 19, Disclosure of Compensation of Plan Agent and Motion for Approval ¶ 9(d), at p. 4 (attached hereto as <u>Exhibit B</u>).

7.     During the course of this chapter 11 case, the D&O Suit was held in abatement by the state court.  Following the Effective Date of the Plan, the D&O Plaintiffs moved to lift the abatement.  The Committee Representative filed an opposition to that motion and a hearing is presently scheduled for September 28, 2006 in the 166th Judicial District, Bexar County, Texas.

## 1.     The Plan and Confirmation Order Vest Authority to Prosecute the D&O Suit in the Committee Representative

8.     On February 7, 2005, the Bankruptcy Court held a hearing to confirm the First Amended Plan of Liquidation Under Chapter 11, Title 11, United States Code of Dexterity Surgical, Inc. dated December 7, 2004 (the "Plan") and on March 2, 2005, entered the Order confirming the Plan (the "Confirmation Order").  The Confirmation Order contained certain non-material modifications to the Plan.

9.     The Confirmation Order vests the Committee Representative with the authority "to prosecute, settle or abandon the Avoidance Actions and other causes of action that are Estate Property against third parties, except for the D&O Suit, which if the Plan Agent has a conflict of interest, the Committee Representative shall have the power to prosecute settle or abandon."  *See* Confirmation Order at p. 2.  This provision is also contained in the modified Plan.  *See* Plan § 7.6.3.1.  The Committee Representative is the sole party with power to prosecute, settle or

4

abandon the claims because the Plan Agent, Randall Boatright, has a conflict of interest because he is a defendant in the D&O Suit.

10.     The Plan and Confirmation Order also specifically vests the Committee Representative with the authority to intervene as the plaintiff in the D&O Suit, thus making the Committee Representative the proper plaintiff in the D&O Suit. *See* Confirmation Order at p. 2, Plan § 7.6.3.2. Accordingly, the Committee Representative has the authority to prosecute, defend and settle the D&O Suit in addition to all other actions on behalf of the estate.

## 2.     The D&O Suit is a Classic Derivative Action

11.     The action of this Court in specifically vesting the Committee Representative with authority to prosecute and settle the D&O Suit is merely a result of the application of well settled law to the facts at hand. As with most suits of its type, the D&O Suit asserts, among other things, claims for breach of fiduciary duty. *See Production Resources Group, LLC v. NCT Group, Inc.,* 863 A.2d 772, 792-93 (Del. Ch. 2004) (holding that claims for breaches of fiduciary duties belong solely to corporations and can only be raised derivatively). The claims in the D&O Suit are asserted by minority shareholders and, as required by long standing Texas and Delaware precedent, any recovery therefrom is to be paid to the company, *i.e.* the Debtor. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1036 (Del. Supr. 2004) ("Because a derivative suit is being brought on behalf of the corporation, the recovery, if any, must go to the corporation."); *see also Redmon v. Griffith,* __ S.W. 2d. __, 2006 WL 870288, at 4 (Tex. App 2006); *King v. Douglass,* 973 F.Supp. 707, 713 (S.D. Tex. 1996) ("Under both Delaware and Texas law, a shareholder may not personally recover damages for a wrong done solely to the corporation, even though the shareholder may be injured by that wrong."). Indeed, it is a nearly universal proposition that claims asserting that the actions of directors and officers or controlling

5

shareholders (such as the claims at issue in the D&O Suit) damaged the company are derivative and any recovery is paid to the company. *See, e.g.*, 13 WILLIAM M. FLETCHER ET AL., FLETCHER CYCLOPEDIA § 2028 (2004) (stating that any recovery in a derivative action generally belongs to the corporation and not the plaintiff or other shareholders).

12.     The D&O Suit contains all of the hallmarks of the classic derivative action. Under Delaware law, the touchstone of such a determination is whether the damages asserted were suffered by the corporation as a whole, *i.e.* assets were fraudulently transferred, or whether the plaintiff can demonstrate it suffered special damages, separate and distinct from others similarly situated. *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 155 n.3 (Del. Ch. 2005) ("In assessing whether a claim is direct or derivative the Court must determine '(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually).'" (citation omitted)).

13.     Here, there can be no question that the D&O Suit is a derivative action because the D&O Plaintiffs cannot demonstrate any special and separate injury that they suffered. To the contrary, the D&O Complaint makes clear that the injury was suffered by the Debtor. *See, e.g.*, D&O Complaint ¶ 34, at 9 ("Ultimately, the Individual Defendants did wrongfully confer great value upon Teleflex at the expense of Plaintiffs and Dexterity Surgical"). Indeed, all the alleged injuries *were* suffered equally by all constituencies of the Debtor. For example, the D&O Complaint alleges that the defendants improperly transferred certain assets of the Debtor, thus causing damage to the Debtor, which in turn caused the Debtor to be unable to pay its creditors, including the Plaintiffs. There is no allegation that the D&O Plaintiffs suffered some separate

and distinct damage. Rather, the damages alleged by the D&O Plaintiffs were suffered by the Debtor with a resulting harm to all of the creditors and shareholders equally.

**3.     The D&O Suit is Property of the Estate**

14.     As is clear from a review of the D&O Complaint, the harms caused by the actions complained of therein were suffered by the Debtor, the claims are therefore derivative and, as such, constitute property of the estate. *See, e.g., See Louisiana World Exposition v. Federal Ins. Co.,* 858 F.2d 233, 246 (5th Cir. 1988) (finding that a trustee in bankruptcy has the right to prosecute a derivative action as such action is property of the debtor's estate); *Pereira v. Farace,* 413 F.3d 330 (2d cir. 2005) (finding that a pre-petition derivative action is property of the debtor's estate). An action to effect property of the estate is prohibited by the automatic stay. *See* 11 U.S.C. § 362(a)(3). *In re RNI Wind Down Corp.,* __ B.R. __, 2006 WL 2422753, at 10 (Bankr. D. Del. 2006) (holding that continuing prosecution of a derivative action is prohibited by the automatic stay because such an action is property of the debtor's estate). Even if the automatic stay did not apply, here the Plan provides an injunction prohibiting all entities from asserting "any claims, debts, rights, causes of action, liabilities or equity interests relating to the Debtor . . . based upon any act, omission, transaction, or other activity of any nature that occurred prior to the Effective Date." *See* Plan at § 9.1, p. 19.

15.     As such, the D&O Plaintiffs are prohibited from taking any action in the D&O Suit and any such action would be a violation of the automatic stay and the Plan injunction, punishable by damages. *See Mitchell v. BankIllinois (In re Mitchell),* 316 B.R. 891, 904 (S.D. Tex. 2004) (affirming Bankruptcy Court's award of damages for violation of section 362(a)(3)).

16.     Shortly after the commencement of the Adversary Proceeding, the Committee Representative, as the plaintiff in the Adversary Proceeding and the proper plaintiff in the D&O

NYC/296143.1

Suit pursuant to the Plan and Confirmation Order, entered into negotiations with the Defendants in an attempt to resolve the various disputes in an expeditious and cost-effective manner. The Committee Representative believes that it is appropriate to resolve the claims against the Defendants in the D&O Suit and Adversary Proceeding together as the actions involve common parties.

17.     The Committee Representative informed the Defendants that if a settlement was not reached, the Committee Representative would promptly intervene and begin prosecuting the D&O Suit. Ultimately, the parties agreed to as settlement which will be memorialized in a Settlement Agreement and Release (the "Settlement Agreement") to be executed and delivered by the parties, substantially in the form attached hereto as Exhibit C. The Committee Representative is continuing negotiations with the other defendants in the D&O Suit and is hopeful that a settlement will be reached in the near future. The Committee Representative, however, has advised the remaining defendants in the D&O Suit that if a settlement is not reached shortly, the Committee Representative will begin prosecuting the claims against them and move forward to judgment.

## COMPROMISE AND SETTLEMENT AGREEMENT

18.     The Committee Representative submits the Settlement Agreement for approval by this Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

19.     The terms of the agreement are simple, the Defendants shall pay the total sum of $200,000 in cash to the Committee Representative in consideration for a full release of all claims arising in both the Adversary Proceeding and D&O Suit, as well as mutual releases between all parties of past, present and future causes of action. The payment to be received by the Committee Representative is a recovery of nearly sixty percent of the amount sought in the Adversary Proceeding and prevents the Committee Representative from incurring further

NYC/296143.1

unnecessary legal fees to prosecute both the Adversary Proceeding and D&O Suit. The full terms are set forth in detail in the Settlement Agreement.

## ARGUMENT

20.     In considering whether to approve a settlement agreement, Bankruptcy Courts must evaluate fairness, equity and the best interest of the estate. *See Connecticut Gen. Life Insurance Co. v. United Companies Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1996); *U.S. v. Aweco, Inc. (In re Aweco, Inc.)*, 725 F.2d 293, 298 (5th Cir. 1984).

21.     To make such a determination, the Court should compare the relative strengths and weaknesses of each party's claims and the probability of success for each of the parties should the claims and disputes continue to be litigated. *Connecticut Gen. Life Insurance Co.*, 68 F.3d at 917. The Fifth Circuit has developed a three-part test for evaluating whether a settlement is fair, equitable and in the best interests of the estate and creditors which requires the Court to consider "(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Id. See also, In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

22.     In the present case, the Defendants have asserted defenses that raise complex issues of law and fact, including that the transfers were made in the ordinary course of business and that transfers were part of a complex multi-party transaction that is protected by the set-off provisions of the Bankruptcy Code. In addition, the overlap between the Adversary Proceeding and D&O Suit raises complex federal and state jurisdictional questions. Although the Committee Representative is confident that he would ultimately succeed, if these matters were not settled, discovery would be required and it is likely that the Committee Representative would be required to employ one or more experts, which would create delays in any recovery to the

9

NYC/296143.1

estate as well as substantially increasing litigation costs. Furthermore, it is possible that the Defendants could succeed in presenting their defenses. Thus, there is a risk that the estate would recover nothing or less than the amount which the Defendants are willing to pay, which allows recovery to the estate of nearly sixty percent of the amount sought in the Adversary Proceeding. Moreover, the Defendants could also succeed on pursuing their indemnity claim in the D&O Suit, thus exposing the estate to increased liability and harming creditors.

23.     If the Committee Representative were to proceed with litigation and obtain a judgment against the Defendants and continue to prosecute the D&O Suit, it is not clear whether Defendants have liquid assets from which a judgment could be collected. Even in the best of circumstances, however, it is clear that the Committee Representative will not recover anything for many months, if not years. Thus, the risks, complexity, cost, and delay of continuing these litigations are sufficient to establish the necessary benefits to approve the Settlement Agreement, which is fair, equitable and in the best interest of all the parties.

NYC/296143.1

## PRAYER

WHEREFORE, the Committee Representative respectfully requests that the Court enter an order approving the Settlement Agreement as set forth herein, and granting such other and further relief as the Court deems just and proper.

Dated:   September 27, 2006

Respectfully submitted,

*/s/ Schuyler G. Carroll*
Andrew I. Silfen
Schuyler G. Carroll
ARENT FOX PLLC
1675 Broadway
New York, NY 10019
(212) 484-3900

- and -

Barnet B. Skelton, Jr.
State Bar No. 18456400
1111 Bagby, 47th Floor
Houston, TX 77002
(713) 659-8761

Attorneys for the Committee Representative

11

NYC/296143.1

**<u>EXHIBIT A</u>**

CAUSE NO. 2002-CI-06331

| | | |
|---|---|---|
| SURGICAL VISIONS, I, INC.,<br>KALFORD C. FADEM, JERRY J.<br>FADEM, JR., KRISTAL M. FADEM,<br>ROBERT AND BEVERLY EVANS,<br>AND ROBERT and BETH FADEM,<br>    Plaintiff(s), | § | IN THE DISTRICT COURT OF |
| vs. | § | 166TH JUDICIAL DISTRICT |
| TELEFLEX INCORPORATED,<br>RICHARD WOODFIELD,<br>CHRISTOPHER BLACK, JEFFREY<br>BERG, JOHN SICKLER, RANDALL<br>BOATRIGHT, WILLIAM<br>BOOKWALTER, AND DEXTERITY<br>SURGICAL, INC.,<br>    Defendant(s). | | |
| | § | BEXAR COUNTY, TEXAS |

## PLAINTIFFS' SECOND AMENDED PETITION

NOW COME Plaintiffs, SURGICAL VISIONS, I, INC., Kalford C. Fadem, Jerry J. Fadem, Jr., Kristal M. Fadem, Robert and Beverly Evans, and Robert and Beth Fadem, complaining of Defendants, DEXTERITY SURGICAL, INC., TELEFLEX INCORPORATED, Richard Woodfield, Christopher Black, Jeffrey Berg, John Sickler, Randall Boatright, and William Bookwalter, and would respectfully show the Court the following:

### DISCOVERY LEVEL

1.    Discovery should take place under Level 3 of the Texas Rules of Civil Procedure.

### SUMMARY AND OVERVIEW

2.    This case is the ultimate example of abusive, oppressive conduct by those in positions of power and trust. Plaintiffs are minority shareholders of DEXTERITY SURGICAL, INC. ("DEXTERITY SURGICAL" or the "Company"), a small public company. Defendant TELEFLEX INCORPORATED ("TELEFLEX"), a large public company, took advantage of its controlling interest in DEXTERITY SURGICAL as the Company's majority shareholder when it acted, and caused DEXTERITY SURGICAL to act, to benefit itself at the direct expense of Plaintiffs. In so doing, TELEFLEX breached

the fiduciary obligations it owed Plaintiffs - namely to act in Plaintiffs' best interests - and caused Plaintiffs special injury.

3.     Similarly, Defendants Woodfield, Black, Berg, Sickler, Boatright and Bookwalter (collectively, the "Individual Defendants") violated the fiduciary duties they owed Plaintiffs.  The Individual Defendants' duties to Plaintiffs stem not only from their positions of power as board members and/or officers of DEXTERITY SURGICAL, but also because the Individual Defendants constitute a "dominant," or "controlling" group of shareholders.  Specifically, the Individual Defendants acted together to control the affairs of DEXTERITY SURGICAL solely to benefit TELEFLEX. The Individual Defendants acted only with their own and TELEFLEX's best interests in mind, and never considered the Plaintiffs' best interests.  As such, the Individual Defendants breached the fiduciary duties they owed Plaintiffs, and caused Plaintiffs direct, personal harm.

4.     Among other wrongful acts, TELEFLEX seized control of DEXTERITY SURGICAL's two key assets, the PneumoSleeve and Protractor, and directed the distribution of these assets - through a sham agreement - to Weck Closure Systems, Inc. ("Weck"), a TELEFLEX subsidiary.  The sham distribution agreement benefitted Weck and, therefore, TELEFLEX, but operated to cause direct, personal harm to Plaintiffs.

5.     All the while, countless highly qualified companies aggressively sought to obtain the distribution rights to the PneumoSleeve and Protractor, often on quantified terms far more favorable to Plaintiffs and DEXTERITY SURGICAL.  However, the inquiries and offers were ignored so that the profits from the sale and distribution of these valuable, flagship products would be directed to TELEFLEX, notwithstanding Plaintiffs' best interests which clearly demanded otherwise.

6.     Thereafter, TELEFLEX and the Individual Defendants caused DEXTERITY SURGICAL to revise the terms of the existing agreement, without any consideration, by releasing Weck from the minimal obligations it had thereunder.  In so doing, TELEFLEX and the Individual Shareholders have

oppressed Plaintiffs by violating their personal rights and, absent judicial intervention, will continue to do so.  As a result, Plaintiffs have suffered special injury.

7.      Moreover, in addition to claims for the harm it suffered as a minority shareholder, Plaintiff SURGICAL VISIONS, I., INC. ("SURGICAL VISIONS"), an entity largely owned by the individual Plaintiffs in this case, has also been harmed as a result of DEXTERITY SURGICAL's breach of several contracts it has with SURGICAL VISIONS.  The actions of TELEFLEX and the Individual Defendants, as are described herein, caused DEXTERITY SURGICAL to breach these contracts (i.e. by failing to make mandatory payments due SURGICAL VISIONS thereunder).

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under state law, including common law and statutory law.  Jurisdiction is conferred by the Constitution of the United States of America and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code §17.042(2).

9.      Venue is proper in this Court pursuant to Tex. Civ. Prac. & Rem. Code §15.002(3) because DEXTERITY SURGICAL's principal executive offices are located at 12961 Park Central, Suite 1300, San Antonio, Texas 78216.  As such, many of the acts and transactions giving rise to the violations of law complained of herein took place in Bexar County.

## PARTIES

10.     At all relevant times, each of the Plaintiffs was a minority shareholder of DEXTERITY SURGICAL by virtue of owning DEXTERITY SURGICAL common stock:

- SURGICAL VISIONS                              approx. 500,000 shares
- Kalford C. Fadem ("K. Fadem")                 approx. 180,000 shares
- Jerry J. Fadem, Jr.                           approx. 171,000 shares
- Kristal M. Fadem                              approx. 40,075 shares
- Robert ("R. Evans") and Beverly Evans         approx. 131,250 shares
- Robert ("R. Fadem") and Beth Fadem            approx. 100,000 shares

11.    Plaintiff SURGICAL VISIONS is also party to a royalty agreement and promissory note and has sustained significant contract damages arising out DEXTERITY SURGICAL's breach of, and TELEFLEX's and the Individual Defendants' tortious interference with, these two contracts.

12.    Several Plaintiffs formerly held executive and/or directorial positions at DEXTERITY SURGICAL until they each resigned in light of the oppressive acts they complain of herein. K. Fadem, for instance, served as DEXTERITY SURGICAL's Chief Operating Officer from March 18, 1999 until his resignation from the Company on June 12, 2000, and served as a member of DEXTERITY SURGICAL's Board of Directors (the "Board") until he resigned from that position on or about March 2001.

13.    R. Evans also served as a member of DEXTERITY SURGICAL's Board until he resigned on or about June 2001. R. Fadem served as DEXTERITY SURGICAL's Vice President of Sales until he resigned from that position on or about August 2000.

14.    Defendant TELEFLEX is a large public company and, at all relevant times, was DEXTERITY SURGICAL's controlling shareholder, owning more than thirty (30) percent of DEXTERITY SURGICAL's outstanding common stock.  As is described herein, TELEFLEX maintained near complete control over DEXTERITY SURGICAL's Board. Defendant TELEFLEX maintains its principal place of business at 630 West Germantown Pike, Suite 450, Plymouth Meeting, Pennsylvania 19462.

15.    Defendant Richard A. Woodfield, at all relevant times, has been DEXTERITY SURGICAL's Chief Executive Officer ("CEO") and a member of DEXTERITY SURGICAL's Board. Defendant Woodfield and TELEFLEX's CEO, Lennox Black, are close personal friends.  Defendant Woodfield resides and may be served with citation at 112 Ivy Lane, King of Prussia, Pennsylvania 19406.

16.    Defendant Christopher Black, at all relevant times, was a member of DEXTERITY

SURGICAL's Board, and is the son of TELEFLEX's CEO, Lennox Black. Defendant Black resides at 982 Jamie Court, Blue Bell, Pennsylvania 19422.

17.     Defendant John Sickler, at all relevant times, was a member of DEXTERITY SURGICAL's Board of Directors until he resigned from DEXTERITY SURGICAL's Board of Directors on or about November 29, 2000. Also, at all relevant times, Defendant Sickler also served as Vice Chairman of the Board of Directors of Defendant TELEFLEX. As is set forth in detail below, even after his resignation from DEXTERITY SURGICAL, Defendant Sickler maintained and exercised *de facto* control over DEXTERITY SURGICAL with only one goal in mind - to protect the interests of Defendant TELEFLEX at any cost.   Defendant Sickler may be served care of TELEFLEX INCORPORATED, 630 West Germantown Pike, Suite 450, Plymouth Meeting, Pennsylvania 19462.

18.     Defendant Randall Boatright, at all relevant times, was DEXTERITY SURGICAL's Chief Financial Officer and a member of DEXTERITY SURGICAL's Board of Directors. Defendant Boatright may be served care of DEXTERITY SURGICAL, INC., 12961 Park Central, Suite 1300, San Antonio, Texas 78216.

19.     Defendant Jeffrey Berg, at all relevant times, was a member of DEXTERITY SURGICAL's Board, and resides at 3 Fairhill Road, Edison, New Jersey 08817.

20.     Defendant William Bookwalter, at all relevant times, was a member of DEXTERITY SURGICAL's Board until Defendant Sickler secured a position for him at a TELEFLEX subsidiary so as to motivate his participation in the unlawful acts detailed herein. Defendant Bookwalter resides at 133 Marlborough, Boston, Massachusetts 02116.

21.     DEXTERITY SURGICAL, INC. is a foreign corporation duly formed and existing under the laws of the State of Delaware. The Defendant has obtained a certificate of authority, is duly authorized to transact business in the State of Texas, and may be served with citation in this action

by serving Randall K. Boatright, its registered agent, at 12961 Park Central, Ste. 1300, San Antonio, Bexar County, Texas 78216.

## FACTUAL ALLEGATIONS

22.    In August of 1999, DEXTERITY SURGICAL lost a valuable distribution agreement that had accounted for approximately half of DEXTERITY SURGICAL's gross income.   Accordingly, DEXTERITY SURGICAL needed another corporate partner to handle the sale and distribution of its products.

23.    In early February 2000, the Individual Defendants purported to begin a "search" for an appropriate new distribution partner.  Numerous qualified medical supply companies expressed interest in a partnership with DEXTERITY SURGICAL.  In fact, one of the suitors, PrimeSource, even offered to guarantee significant minimum payments to cash-starved DEXTERITY SURGICAL for the opportunity to be its distribution partner. DEXTERITY SURGICAL's "search" for a distribution partner, however, was illusory.

24.    Instead, viewing the need for a new distribution partner as an opportunity to benefit themselves, TELEFLEX and the Individual Defendants ignored their fiduciary and contractual obligations to Plaintiffs and wrongfully capitalized upon the situation. Indeed, TELEFLEX and the Individual Defendants caused DEXTERITY SURGICAL's flagship products, the PneumoSleeve and Protractor, to be moved into the TELEFLEX organization by directing the valuable assets to Weck, a TELEFLEX subsidiary, through a sham distribution agreement.

25.    There is no doubt that the distribution agreement with Weck served the best interests of TELEFLEX.  There is also no doubt, however, that the Weck agreement did not serve the best interests of Plaintiffs.

26.    Next, without Board approval, and without knowledge of the full Board, Defendant

Woodfield terminated DEXTERITY SURGICAL's entire sales force. Defendant Woodfield's June 26, 2000 letter of termination to DEXTERITY SURGICAL's sales force stated that Weck would take over the distribution and sales of DEXTERITY SURGICAL products on July 3, 2000, notwithstanding that no distribution agreement with Weck had been reached, nor was their a Board Resolution authorizing an agreement with Weck.

27.     On or about June 28, 2000, in accordance with the Company's bylaws, DEXTERITY SURGICAL Board members K. Fadem and Evans, due to the critical situation, demanded an Emergency Special Meeting of DEXTERITY SURGICAL's Board of Directors upon learning of Defendant Woodfield's unauthorized firing of DEXTERITY SURGICAL's entire sales force. Defendant TELEFLEX and the Individual Defendants initially refused to hold the requested Emergency Special Meeting.

28.     Moreover, on June 29, 2000, Defendant Woodfield issued a knowingly false press release announcing that DEXTERITY SURGICAL and Weck had "signed" a distribution agreement. This assertion was patently false. No distribution agreement between DEXTERITY SURGICAL and Weck had been reached as of June 29, 2000, let alone "signed." Indeed, no approval from the Board had even given.

29.     In truth, DEXTERITY SURGICAL and Weck did not sign the distribution agreement until September 2000. TELEFLEX and the Individual Defendants, however, backdated the agreement to make it appear it was executed on July 1, 2000. TELEFLEX and Defendant Sickler exerted their power and control over Weck's President, Stephen Holmes, to cause him to backdate the agreement as well.

30.     The Individual Defendants also falsified DEXTERITY SURGICAL Minutes and Board

Resolutions as part of their scheme to move the PneumoSleeve and the Protractor into the TELEFLEX family. By way of example, the draft Minutes from the July 27, 2000 Board meeting falsely stated as follows:

> The directors discussed alternatives to execution of the Weck agreement, including a possible arrangement with PrimeSource. It was the unanimous consensus of the Board of Directors with Mr. Sickler abstaining in all respects, that PrimeSource and others had not evidenced the financial ability necessary to provide future benefits to the Company, that the Company was in immediate need of a similar transaction with another company, and that Weck appeared to be the only alternative for the Company.

31.     However, no "unanimous consensus of the Board of Directors" had been reached. Moreover, the Board did not "discuss" any alternatives to the Weck agreement. In fact, Defendant Sickler actually stonewalled one Board member's request that such a discussion be had, stating that it was "too late" for alternatives to be discussed. Thus, not only did Defendant Sickler not abstain in all respects, he prohibited a discussion of alternatives to the Weck by saying it was "too late." Moreover, DEXTERITY SURGICAL never asked any potential distribution partner, including PrimeSource, to provide evidence of their financial ability.

32.     Board member K. Fadem took steps to expose the Individual Defendants' ill-intentioned conduct designed to benefit TELEFLEX at Plaintiffs' expense. In September 2000, K. Fadem and R. Evans sent a series of letters to DEXTERITY SURGICAL's Board detailing TELEFLEX and the Individual Defendants' various abuses of their positions power, trust and control over DEXTERITY SURGICAL in order to benefit TELEFLEX at Plaintiffs' expense. The letters urged the Board to address these improprieties and take corrective actions.

33.     The Individual Defendants all had strong motivation to act exclusively for the benefit of TELEFLEX. Defendant Black and Woodfield both had extremely close relationships with the CEO of Defendant TELEFLEX, Lennox Black: Defendant Woodfield among his closest friends, and

Defendant Christopher Black, his son. Defendants Woodfield and Black, having embarrassed and enraged TELEFLEX's CEO Lennox Black by losing a significant part of TELEFLEX's financial investment in DEXTERITY SURGICAL, felt obligated to try and return at least some value to TELEFLEX.

34.    Ultimately, the Individual Defendants' did wrongfully confer great value upon TELEFLEX at the expense of Plaintiffs and DEXTERITY SURGICAL. The Individual Defendants gave the exclusive distribution rights, as well as a healthy portion of the profits derived therefrom, to TELEFLEX by placing the PneumoSleeve and Protractor in the hands of a TELEFLEX subsidiary. Defendant Sickler, TELEFLEX's Vice Chairman and right-hand man to TELEFLEX CEO Lennox Black, was motivated to make up for the botched TELEFLEX investment in DEXTERITY SURGICAL.

35.    Defendant Bookwalter was given a sales management position at Weck. Defendant Boatright never had his salary decreased regardless of the mandate from the Company's management committee that executive salaries be cut . Also, the salary of non-party Richard Feiler, DEXTERITY SURGICAL's Vice President of Marketing, was increased to $150,000, notwithstanding that DEXTERITY SURGICAL's 2000 Annual Report stated the Company conducted no marketing, and was in dire financial straights.

36.    On or about November 29, 2000, Defendant Sickler tendered his letter of resignation. Therein, Defendant Sickler specifically acknowledged (a) that independent Board members K. Fadem and R. Evans had raised "legitimate issues that should be addressed by the Board;" (b) that Defendant Woodfield had been the beneficiary of unlawful options grants from DEXTERITY SURGICAL; and (c) further acknowledged the need to create an independent committee to study the allegations of impropriety.

37.    In  reality, though, Defendant Sickler retained firm control over DEXTERITY SURGICAL and its operations even after he had resigned.  To this day, Sickler controls DEXTERITY

SURGICAL's distribution decisions, its finances, as well as its overall operations. Defendant Sickler also is still Vice Chairman of TELEFLEX.

38.       In or around May 2001, Defendant Boatright, acting on behalf of TELEFLEX, secretly negotiated a buyout of a note held by DEXTERITY SURGICAL's senior secured creditor, which consolidated total control of DEXTERITY SURGICAL in the hands of TELEFLEX.

39.       Thereafter, in or around early 2001, TELEFLEX identified began to evaluate the OmniPort, a product competitive to the PneumoSleeve. In the end, TELEFLEX concluded it could make more money selling the OmniPort than the PneumoSleeve. However, Weck was prohibited, of course, under the distribution agreement, to sell products competitive to the PneumoSleeve and the Protractor.

40.       In utter disregard of their fiduciary duties of loyalty and care that they owed Plaintiffs, on or about June 5, 2001, TELEFLEX and the Individual Defendants caused DEXTERITY SURGICAL to revise the existing sham agreement and waive the few obligations that Weck did have thereunder (i.e. to use its best efforts to sell and distribute the PneumoSleeve). Weck's minimum sales commitments under the agreement were also reduced. There was no valid consideration for the amendments to the Weck agreement, but rather the consideration was to benefit TELEFLEX at Plaintiffs' expense.

41.       DEXTERITY SURGICAL later acknowledged the harm caused by the Weck contract modification in its fiscal year 2001 Form 10-KSB, filed with the Securities and Exchange Commission. The filing stated that DEXTERITY SURGICAL:

> recognized impairments of approximately $10,400,000 on licensed technology rights for the PneumoSleeve and Protractor due to the lack of expected future cash flows, specifically the reduced minimum purchase guarantees under the Weck agreement.

42.    Weck destroyed the value of the PneumoSleeve by switching current PneumoSleeve customers to the OmniPort, and caused Plaintiffs special harm.

## TELEFLEX AND THE INDIVIDUAL DEFENDANTS OWED PLAINTIFFS FIDUCIARY DUTIES

43.    TELEFLEX and the Individual Defendants owed Plaintiffs fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage DEXTERITY SURGICAL in a fair, just, honest and equitable manner.   The Individual Defendants were and are required to act in furtherance of the best interests of Plaintiffs and not in furtherance of their personal interest or benefit.

44.    TELEFLEX and the Individual Defendants, abused their positions of control, trust and authority as directors, officers, and/or the controlling shareholder and/or controlling or dominant group of shareholders.  As a result, TELEFLEX and the Individual Defendants were able to and did, directly and/or indirectly, cause Plaintiffs direct injury by putting TELEFLEX's best interests ahead of the best interests of Plaintiffs.

45.    As alleged in herein, TELEFLEX and the Individual Defendants breached their fiduciary duties of loyalty, good faith, and due care by operating DEXTERITY SURGICAL for the exclusive benefit of TELEFLEX without regard to Plaintiffs' best interests.

## DEFENDANTS TORTIOUSLY INTERFERED WITH, AND CAUSED DEXTERITY SURGICAL TO BREACH, ITS OBLIGATIONS TO PLAINTIFF SURGICAL VISIONS PURSUANT TO A ROYALTY AGREEMENT AND PROMISSORY NOTE

46.    Separate and apart from the damages it sustained as a minority shareholder, SURGICAL VISIONS also has sustained significant contract damages personal to it arising out DEXTERITY SURGICAL's breach of, and TELEFLEX's and the Individual Defendants' tortious interference with, a royalty agreement (the "Royalty Agreement") and promissory note (the "Promissory Note") that SURGICAL VISIONS acquired pursuant to the March 18, 1999 merger of LifeQuest Medical, Inc. and

DEXTERITY, INC. (the "LQ / Dexterity Merger" or the "Merger"). DEXTERITY SURGICAL became the surviving entity after the Merger.

47. Specifically, the Royalty Agreement obligated DEXTERITY SURGICAL to make certain specified minimum royalty payments to SURGICAL VISIONS at certain specified point in time. Defendants breaches of their fiduciary duties to Plaintiffs also cause DEXTERITY SURGICAL to cease making mandatory payments to SURGICAL VISIONS pursuant to the Royalty Agreement. Thus, SURGICAL VISIONS has further suffered direct, special harm as a result of Defendants' conduct in that it is owed substantial sums of money, with interest thereon, pursuant to the Royalty Agreement.

48. To the extent that the time for payments set forth in the Royalty Agreement have not yet passed, those payments are nonetheless immediately due and payable as a result of Defendants' material breaches of and/or tortious interference with the Royalty Agreement, which caused payments thereunder to be accelerated.

49. Furthermore, like the Royalty Agreement, Defendants' wrongful acts as alleged herein caused DEXTERITY SURGICAL fail to pay Plaintiff SURGICAL VISIONS money due it pursuant to the Promissory Note and thus materially breach that agreement. Again, Defendants' unlawful actions constitute tortious interference with that agreement.

## COUNT I
### (FRAUD)
**On Behalf of All Plaintiffs Against Defendants Teleflex, Woodfield, Black, Berg, Sickler, Boatright and Bookwalter**

50. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

51. The activities set forth herein operated as a fraud and deceit upon Plaintiffs. Because

said transactions involved the stock in a corporation, Section 27.01 of the TEXAS BUSINESS AND COMMERCE CODE grants a statutory cause of action for damages in addition to a cause of action for common law fraud.

52.     Each referenced Defendant is liable for participating in the fraudulent scheme and course of conduct.  Each of the referenced Defendants either participated directly in the scheme to defraud Plaintiffs or, at minimum, had knowledge of the scheme and failed to take any actions to stop same.

53.     The fraud had the actual effect of moving DEXTERITY SURGICAL's most valuable assets into the TELEFLEX organization, which benefitted TELEFLEX and operated to the severe detriment of Plaintiffs and caused them each direct, special injury.

## COUNT II
### (CIVIL CONSPIRACY)
#### On Behalf of All Plaintiffs Against Defendants Teleflex, Woodfield, Black, Berg, Sickler, Boatright and Bookwalter

54.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

55.     The referenced Defendants, collectively, agreed to, and in fact did, conspire to defraud Plaintiffs.  The referenced Defendants entered into an unlawful agreement to operate for the exclusive benefit of Defendant TELEFLEX, without any consideration of the rights of Plaintiffs or the harm such actions might, and did, cause them.

56.     Through a series of unlawful overt acts, the plan caused DEXTERITY SURGICAL to operate in such a way that the only benefactor of its operations would be TELEFLEX.  At the same time, however, the plan also caused Plaintiffs' substantial injury.

## COUNT III
### (INTENTIONAL BREACH OF FIDUCIARY DUTY)
### On Behalf of All Plaintiffs Against Defendants Teleflex,
### Woodfield, Black, Sickler, Berg, Boatright and Bookwalter

57.    Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

58.    The referenced Defendants are fiduciaries of Plaintiffs and directly owe Plaintiffs the duty to conduct the business of DEXTERITY SURGICAL loyally, faithfully, carefully, diligently and prudently. This claim is asserted based upon the referenced Defendants' intentional breaches of the fiduciary duties they owed Plaintiffs.

59.    These Defendants, in their roles as executives, directors, the controlling and/or majority shareholder of DEXTERITY SURGICAL, and/or as part of a dominant or controlling group of shareholders, participated in the acts alleged herein. These Defendants became aware of the facts alleged herein, but did nothing to correct them and thereby intentionally breached the fiduciary duties they owed Plaintiffs directly.

60.    Thus, these Defendants are responsible and liable to Plaintiffs for these breaches of fiduciary duties. As a result of these Defendants' wrongful conduct and actions, Plaintiffs have suffered considerable damages.

61.    The referenced Defendants, singly and in concert, engaged in the aforesaid conduct in an intentional and/or reckless disregard of their fiduciary duties to Plaintiffs. These Defendants conspired to abuse, and did abuse, the control and high degree of trust vested in them by virtue of their high-level positions at DEXTERITY SURGICAL.

62.    By reason of the forgoing, these Defendants have breached their fiduciary

obligations to Plaintiffs, and Plaintiffs have suffered direct, special injury as a result of Defendants'

intentional and/or reckless breaches of their fiduciary duties, injuries separate and distinct from other

shareholders.

## COUNT IV
### (NEGLIGENT BREACH OF FIDUCIARY DUTY)
### On Behalf of All Plaintiffs Against Defendants Teleflex,
### Woodfield, Black, Berg, Sickler, Boatright and Bookwalter

63.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth

herein.

64.     The referenced Defendants engaged in and/or aided and abetted the aforesaid conduct

without exercising the reasonable and ordinary care which they, as fiduciaries, owed to Plaintiffs and

thereby negligently breached and/or aided and abetted breaches of fiduciary duties to Plaintiffs.

65.     By reason of the foregoing, the referenced Defendants caused Plaintiffs direct, special

injury and substantial harm to their personal rights separate and distinct from other shareholders.

## COUNT V
### (BREACH OF CONTRACT)
### On Behalf of Plaintiff Surgical Visions Against Defendant Dexterity Surgical

66.     Plaintiff SURGICAL VISIONS repeats and realleges the allegations set forth above as

though fully set forth herein.

67.     SURGICAL VISIONS and DEXTERITY SURGICAL, knowingly and willingly, entered into

two contracts, a Promissory Note and Royalty Agreement.  There was a meeting of the minds for

both contacts, and under each contract, there was bargained for consideration flowing to each party.

68.     DEXTERITY SURGICAL has failed to perform its obligations under both contracts,

namely to make specified mandatory payments at specified points in time.  According, DEXTERITY

SURGICAL is in breach of the Promissory Note and the Royalty Agreement, and Plaintiff SURGICAL

VISIONS is entitled to the accelerated payments of all monies due it pursuant to both of these contracts, together with appropriate interest thereon.

## COUNT VI
### (TORTIOUS INTERFERENCE WITH CONTRACT)
#### On Behalf of All Plaintiffs Against Defendants Teleflex, Woodfield, Black, Berg, Sickler, Boatright and Bookwalter

69.    The wrongful of acts of TELEFLEX and the Individual Defendants complained of herein also constituted tortious interference with DEXTERITY SURGICAL's fulfillment of its obligations to Plaintiff SURGICAL VISIONS pursuant to the Royalty Agreement and Promissory Note.

70.    TELEFLEX's and the Individual Defendants' tortious acts of interference with these contracts between SURGICAL VISIONS and DEXTERITY SURGICAL was the proximate cause of DEXTERITY SURGICAL's breach of both the Promissory Note and Royalty Agreement.

71.    As a result of this tortious interference with these contacts between SURGICAL VISIONS and DEXTERITY SURGICAL, SURGICAL VISIONS has suffered significant harm.

72.    To the extent that all Plaintiffs are not in privity of contract with DEXTERITY SURGICAL, they are third party beneficiaries to said contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment as follows:

A.    Awarding Plaintiffs compensatory damages for damages they sustained as oppressed minority shareholders, in an amount to be determined at trial, together with pre-judgment and post-judgment interest;

B.    Awarding Plaintiffs punitive damages sufficient to punish Defendants for their underhanded conduct and to deter such behavior by Defendants in the future;

C.    Awarding Plaintiffs exemplary damages to which they are entitles as a result of Defendants' violations of Section 27.01 (d) of the TEXAS BUSINESS AND COMMERCE CODE and reasonable and necessary attorneys' fees, expert witness fees as are provided by this statute;

D.    Awarding SURGICAL VISIONS accelerated payments of all amounts due it pursuant to both the Royalty Agreement and Promissory Note together with pre-judgment and post-judgment interest thereon;

E.    Awarding costs and expenses incurred in this action, including reasonable attorneys' fees, and expert witness fees;

F.    Costs of Court; and

G.    Granting such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Respectfully submitted,

ATTORNEYS FOR PLAINTIFFS

John G. Emerson, Jr.
EMERSON POYNTER, L.L.P.
830 Apollo Lane
Houston, Texas 77058
281/488-8854
281/488-8867 (Facsimile)

Corey D. Holzer and Michael I. Fistel, Jr.
HOLZER & HOLZER
6135 Barfield Road, Suite 102
Atlanta, Georgia 30328
770/392-0090
770/392-0029 (Facsimile)

Scott E. Poynter
EMERSON POYNTER, L.L.P.
P.O. Box 164810
Little Rock, Arkansas 72216-4810
501/907-2555
501/907-2556 (Facsimile)

SHADDOX, COMPERE,
   WALRAVEN & GOOD, P.C.
1250 N.E. Loop 410, Suite 725
San Antonio, Texas 78209
210/822-2018
210/822-4068 Facsimile

BY: _____
     LINDA S. MCDONALD
     State Bar No. 13552500
     OTTO S. GOOD
     State Bar No. 08139600

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been delivered pursuant to Tex. R. Civ. P. 21(a) to the following individuals on this the ___11th___ day of December, 2003:

ATTORNEYS FOR DEFENDANTS,
JEFFREY BERG, RANDALL BOATRIGHT,
WILLIAM BOOKWALTER AND CHRISTOPHER BLACK

Mr. Ricardo Cedillo
Mr. Derick Rodgers
Mr. Ryan Tucker
DAVIS, CEDILLO & MENDOZA, INC.
755 E. Mulberry Avenue, Suite 500
San Antonio, Texas 78212
210/822-6666
210/822-1151 (Facsimile)

Mr. Bradley Beckman
BECKMAN & ASSOCIATES
Two Penn Center Plaza
Suite 910
Philadelphia, PA 19102
215/569-3096
215/569-8769 (Facsimile)

ATTORNEYS FOR DEFENDANTS
TELEFLEX INCORPORATED AND JOHN SICKLER

Mr. Frank Griffin, III
Mr. Michael Haley
GOLLATZ GRIFFIN & EWING
Four Penn Center, Suite 200
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103-2808
610/692-9116
610/692-9177 (Facsimile)

Mr. Kyle C. Watson
GOODE CASSEB JONES
RIKLIN CHOATE & WATSON, P.C.
2122 N. Main Avenue
San Antonio, Texas 78212
210/733-6030
210/733-0330 (Facsimile)

LINDA S. MCDONALD
OTTO S. GOOD

**<u>EXHIBIT B</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 04-35817 |
| DEXTERITY SURGICAL, INC. | § | |
| | § | CHAPTER 11 CASE |
| | § | |
| DEBTOR. | § | |

DISCLOSURE OF COMPENSATION
OF PLAN AGENT AND MOTION FOR APPROVAL

**IF YOU WANT A HEARING, YOU MUST REQUEST ONE IN WRITING, AND YOU MUST RESPOND SPECIFICALLY TO EACH PARAGRAPH OF THIS PLEADING. YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TEN DAYS FROM THE DATE YOU WERE SERVED AND GIVE A COPY TO THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF.**

Dexterity Surgical, Inc. ("Dexterity" or "Debtor") and the Official Committee of Unsecured Creditors for Dexterity Surgical, Inc. (the "Committee"), file this Disclosure of Compensation of Plan Agent and Motion for Approval pursuant to sections 7.1.1 and 7.6.4 of First Amended Plan of Liquidation Under Chapter 11, Title 11, United States Code of Dexterity Surgical, Inc., and respectfully states as follows:

1.      On April 19, 2004, (the "Petition Date"), Dexterity filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and continued to operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

1

2.      On June 4, 2004, the United States Trustee for the Southern District of Texas, Houston Division, duly appointed the Committee pursuant to sections 1102(a) and (b) of the Bankruptcy Code.

3.      On February 7, 2005, the Debtor filed its First Amended Plan of Liquidation Under Chapter 11, Title 11, United States Code of Dexterity Surgical, Inc., Dated December 7, 2004 (the "Plan") (Docket No. 181).

4.      On or about March 2, 2005, this Court entered its Order confirming the Plan (Docket No. 184), which expressly provides for the appointment of a Plan Agent[1] and the filing of this notice and disclosure of compensation to be paid.

5.      Under the Plan, Dexterity will liquidate all of its assets.  Dexterity is currently pursuing bids for the sale of those assets and several parties have shown interest.  Dexterity anticipates being able to make distributions to unsecured creditors at the end of this Chapter 11 case as a result of the efforts of the Plan Agent.

## COMPENSATION OF PLAN AGENT

6.      As indicated in the disclosure statement which accompanied the Plan, Debtor designated Randall K. Boatright, the Executive Vice President and Chief Financial Officer of Dexterity as the Plan Agent to carry out the necessary duties to effectuate the Plan (the "Plan Agent").  Mr. Boatright has been the Chief Financial Officer of the Debtor for the past twelve (12) years and is also a licensed C.P.A.  It would be impossible to replace Mr. Boatright with another executive who has as detailed a knowledge regarding the Debtor's operational and financial capabilities.

---

[1]      Capitalized terms used, but not defined herein, shall have the meaning set forth and as defined in the First Amended Plan of Liquidation of the Debtor.

30771548.9

7.      Dexterity previously paid Mr. Boatright an annual salary of $160,000 pursuant to an employment contract.  Upon confirmation of the Plan, that contract was deemed rejected. Under the terms of that contract he was entitled to a severance payment equal to one year's salary upon the sale of substantially all of the assets of the Debtor (which is proposed in the Plan).  Mr. Boatright has filed a proof of claim for the rejection damages owed under his employment contract.

8.      The Plan Agent will continue as an "at will" employee of Dexterity and be paid his current salary and benefits until the occurrence of the Effective Date under the Plan.  After the Effective Date, the Plan Agent will be paid on an hourly basis to perform duties required under the Plan at the rate of $150 per hour.

9.      As further compensation and incentive for his continued services, the Plan Agent will receive certain payments upon occurrence of significant events occurring under the Plan as listed below:

(a)     A payment of $10,000 on the expiration of 10 days following the filing of this disclosure with the Clerk of the Bankruptcy Court or, if an objection is filed, upon the entry of an order approving the compensation disclosed herein;

(b)     A payment of $40,000 on the Effective Date if the Plan Agent has completed the following tasks:

(i)     spreadsheet of all claims laid out in an organized fashion, as would be expected from a claims agent;

(ii)    a review of all claims;

(iii)   the preparation of a memorandum for each claim detailing any possible objections, disputes or other potential avenues or reduction, with to each claim (or indication that he is not aware of any);

(iv)    preparation of a file on every claim containing all documents (i) that may be helpful to disputing the claim, (ii) any other documents related to the claim or that creditor and (iii) the memorandum related to that claim;

30771548.9

(v)   meeting (or telephone discussions) with counsel to review and prepare for claims objections;

(vi)   meeting (or telephone discussions) with counsel to review and prepare for the potential subordination of claims under 510(b);

(vii)   meeting (or telephone discussions) with counsel to review and prepare for actions to recover potential preference payments - as a starting point, include all payments within 90 days and one year to insiders (whether or not they appear to be recoverable - if some (or all) do not appear to be meritorious claims to pursue, committee rep may agree not to request the above with respect to some or all;

(viii)   assist in the Committee Representative in consideration of whether to proceed with the D&O litigation.

(c)   Cumulative, additional success fee payments based on the percentage of recovery received by unsecured creditors on Allowed Claims as follows:

| | % recovery | | amount |
|---|---|---|---|
| (i) | 0-5% | -- | $15,000 |
| (ii) | 5.01 - 10% | -- | $20,000 |
| (iii) | 10.01 - 20% | -- | $25,000 |
| (iv) | 20.01 - 50% | -- | $25,000 |
| (v) | 50.01 plus | -- | $20,000 |

(d)   The Plan Agent will retain his general unsecured claim of $160,000 and any potential indemnity claim.

10.   The Plan Agent will only be entitled to such payments if, at the time of each significant event, he is either an employee of, or the Plan Agent for, the Debtor, and as such, provides services to the Debtor in accordance with the position then held. Any dispute over the entitlement of the Plan Agent to the receive the payments set forth above shall be resolved by the Bankruptcy Court.

WHEREFORE, Dexterity Surgical, Inc. prays that upon the expiration of the notice period, the Court enter an order approving the compensation of the Plan on the terms set forth herein and for such other relief to which it may be entitled.

30771548.9

Dated: April 21, 2005

Respectfully Submitted,
**FULBRIGHT & JAWORSKI L.L.P.**


By:   _/s/ R. Andrew Black_
      R. Andrew Black
      State Bar No. 02375110
      Fed. ID No. 9040
      1301 McKinney, Suite 4100
      Houston, Texas 77010-3095
      Telephone: 713/651-5151
      Telecopier: 713/651-5246
      **Attorney in Charge for Dexterity Surgical,**
      **Inc., Liquidating Debtor**


**ARENT FOX PLLC**

By: /s/ Schuyler G. Carroll
      Andrew I. Silfen (AS-1264)
      Schuyler G. Carroll (SC-0100)
      1675 Broadway
      New York, NY 10019
      (212) 484-3900
      **Attorneys for the Official Committee**
      **of Unsecured Creditors**

## CERTIFICATE OF SERVICE

    I hereby certify that, pursuant to Bankruptcy Local Rule 9013, a true and correct copy of the foregoing was served by United States first-class mail, postage prepaid to all parties-in-interest on the attached list, on this the 21st day of April, 2005.


      _/s/ R. Andrew Black_
      R. Andrew Black
      1301 McKinney, Suite 5100
      Houston, Texas 7701

30771548.9

# DEXTERITY SURGICAL INC.
## SERVICE LIST
### (up dated as of 04/21/05)

**Debtor**

Dexterity Surgical Inc.
5444 Westheimer Rd., Ste. 1970
Houston, TX 77056

**US Trustee**

Office of the US Trustee
Stephen Douglas Statham
515 Rusk Ave., Ste. 3516
Houston, TX 77002

**Unsecured Creditors**

TFX Equities, Inc. and Teleflex, Inc.
155 S. Limerick Road
Limerick, PA 19468

U.S. Surgical, Inc.
P.O. Box 100777
Atlanta, GA 30384-0777

Christopher K. Black
982 Jamie Court
Blue Bell, PA 19422

Kramer & Kramer, LLP
Attorneys & Counselors
1077 Rydal Road, Suite 100
Rydal. PA 109046-1712

Surgical Visions I, Inc.
2400 Mellwood, Suite 1316
Louisville, KY 40206

Frederick C. Feiler, Jr.
1713 Sonesta Court
Raleigh, NC 27613

Apogee Medical, Inc.
Youngsville Commerce Center
90 Weathers Street
Youngsville, NC 27596

Beckman and Associates
Attn: Brad Beckman
Two Penn Center Plaza
1500 JKF Blvd., Suite 910
Philadelphia, PA 19102

Jerome F. Flaherty
c/o Dexterity, Inc.
2705 Northwest Blvd.
Columbus, OH 43221

American Express Company
7171 Mercy Road, Suite 350
Omaha, NE 68106

Dr. Clark Gerhart, MD
200 S. River St.
Plains, PA 18705-1143

Ricardo G. Cedillo
Davis, Cedillo & Mendoza, Inc.
McCombos Plaza, Suite 500
755 E. Mulberry Ave.
San Antonio, TX 78212-3139

AICCO, Inc.
P.O. Box 200455
Dallas, TX 75320-0455

PrimeSource Surgical
NW 5193
P.O. Box 1450
Minneapolis, MN 55485

Akin Doherty Klein & Feuge
8610 North New Braunfels
Suite 101
San Antonio, TX 78217

Interpark-Tex, Ltd.
c/o R.L. Worth & Associates
4040 Broadway, Suite 522
San Antonio, TX 78209

30710406.1

- 1 -

ConMed Corporation
Attn: Tonya- Collections Dept.
525 French Road
Utica, NY 13502

Applied Medical Resources
P.O. Box 526023
Sacramento, CA 95852-6023

**Parties Requesting Notice**

Barne B. Skelton, Jr.
1111 Bagby, 47th Floor
Houston, TX 77002
Attorney for: Medical Creative
Technologies, Inc. and
Robert D. Rambo

Bruce J. Ruzinsky
Jackson Walker LLP
1401 McKinney, Ste. 1900
Houston, TX 77010

Joseph M. Coleman
Kane, Russell,
Coleman & Logan, P.C.
1601 Elm Street
3700 Thanksgiving Tower
Dallas, Texas 75201

C. Larry Carbo, III
Jackson Walker LLP
1401 McKinney, Ste. 1900
Houston, TX 77010

Internal Revenue Service
Special Procedures Staff
1919 Smith Street
Houston, TX 77052-5557

Security & Exchange Commission
Fort Worth District Office
Harold F. Degenhardt, District
Administrator
801 Cherry Street, 19th Floor
Fort Worth, TX 76102

Arent Fox PLLC
Attn: Andrew I. Silfen,
Schuyler G. Carroll
1675 Broadway
New York, NY 10019

Marilee A. Madan
Attorney at Law
4265 San Felipe, Suite 520
Houston, TX 77027

Mark E. Cedrone
Cedrone & Janove, P.C.
Suite 940, Public Ledger Bldg.
6th Chestnut
Philadelphia, PA 19106

K.C. Fadem
2400 Mellwood Avenue #1316
Louisville, KY 40206

Francis J. Lawall, Esquire
Anne Marie Aaronson, Esquire
PEPPER HAMILTON, LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103

**<u>EXHIBIT C</u>**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| DEXTERITY SURGICAL, INC. | § | CASE NO. 04-35817 |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

-----------------------------------------------------------------------

| | | |
|---|---|---|
| JOSEPH MYERS, AS COMMITTEE REPRESENTATIVE OF DEXTERITY SURGICAL, INC., | § § § | |
| | § | |
| PLAINTIFF, | § § | |
| v. | § | ADV. PROCEEDING NO.  06-03352 |
| EDWARD WECK INCORPORATED, d/b/a WECK, TELEFLEX INCORPORATED, WECK CLOSURE SYSTEMS, LLC, AND PILLING WECK INCORPORATED, | § § § § § § | |
| | § | |
| DEFENDANTS. | § | |

-----------------------------------------------------------------------

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Release (the "Agreement"), effective upon execution by all parties hereto, is made and entered into this 27th day of September, 2006, by and between Randall K. Boatright, as Plan Agent (the "Plan Agent"), Joseph Myers, as Committee Representative of Dexterity Surgical, Inc. (the "Committee Representative") and Teleflex Incorporated, Pilling Weck Incorporated, Pilling Weck Canada L.P., Weck Closure Systems LLC, TFX Equities Incorporated, Edward Weck Incorporated, d/b/a Weck and John Sickler (collectively, the "Teleflex Entities," together with the Plan Agent and the Committee Representative, collectively, the "Parties" and individually, each a "Party").

## RECITALS

**WHEREAS**, on April 29, 2002, certain shareholders of Dexterity Surgical, Inc. (the "Debtor") filed a complaint against Teleflex Incorporated and former and current officers and directors of the Debtor in the 166th Judicial District, Bexar County, Texas, styled *Surgical Vision I, Inc. v. Teleflex, Inc., et al.*, 2002-CI-06331 (the "D&O Suit"), alleging, among other things, that the Debtor's former and current directors and officers engaged in a conspiracy to defraud minority shareholders, breached their fiduciary duties, falsified corporate minutes, issued false and misleading public filings and press releases, and bribery; and

**WHEREAS**, the defendants in the D&O Suit denied all of the allegations against them; and

**WHEREAS**, the Debtor owes an indemnity obligation to the defendants in the D&O Suit; and

**WHEREAS**, on April 19, 2004, the Debtor filed a petition (the "Petition") for relief under Chapter 11 of Title 11 of the United States Code § 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"), commencing Case No. 04-35817 (the "Bankruptcy Case"); and

**WHEREAS**, on June 4, 2004, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") to represent the creditors holding unsecured claims against the Debtor pursuant to 11 U.S.C. § 1102(a)(1); and

**WHEREAS**, on August 18, 2004, Teleflex Incorporated and TFX Equities Incorporated filed a proof of claim in the Bankruptcy Case asserting a secured claim in the amount of $7,463,396.50 ("Proof of Claim Number 21"); and

**WHEREAS**, on October 8, 2004, in lieu of litigating the classification of Proof of Claim Number 21, the Debtor, Teleflex Incorporated and TFX Equities Incorporated stipulated

-2-

that Proof of Claim Number 21 was timely filed as an unsecured claim rather than as a secured claim; and

WHEREAS, on December 7, 2004, the Debtor filed the First Amended Plan of Reorganization of Dexterity Surgical, Inc. (as modified on March 2, 2006 pursuant to the Order Approving Modification of the First Amended Plan, the "Plan"); and

WHEREAS, on December 7, 2004, the Debtor filed the First Amended Disclosure Statement Accompanying the Plan of Liquidation Under Chapter 11, Title 11, United States Code of Dexterity Surgical, Inc., Debtor (the "Disclosure Statement"); and

WHEREAS, pursuant to Section 7.1 of the Plan, the Plan Agent was to be selected by the Debtor, with such selection approved by the Court; and

WHEREAS, on May 5, 2005, the Court entered the Order Approving Plan Agent Compensation whereby the Plan Agent was appointed; and

WHEREAS, pursuant to Section 7.4 of the Plan, the Plan Agent is vested with certain rights and obligations, including, but not limited to, the authority "to prosecute, settle or abandon the Avoidance Actions and other causes of action that are Estate Property against third parties, except for the D&O Suit, which if the Plan Agent has a conflict of interest, the Committee shall have the power to prosecute settle or abandon;" and

WHEREAS, pursuant to Section 7.1.5 of the Plan, "[t]he Plan Agent shall serve, together with the Committee Representative, as the co-trustee of the Creditor Trust and shall have all authority, in conjunction with the Committee Representative, set forth in this Plan with respect to the Creditor Trust and its assets."; and

WHEREAS, pursuant to Section 7.6.1 of the Plan and upon Plan confirmation, the Committee Representative was appointed on the Confirmation Date; and

-3-

WHEREAS, pursuant to Section 7.6.1 of the Plan, the Committee Representative is vested with the authority "to act on behalf of the Committee for all purposes through and until the later of (a) the filing of the Final report and (b) the completion of the liquidation of the Debtor and the distribution of all remaining assets and cash to creditors."; and,

WHEREAS, pursuant to Section 7.6.1 of the Plan, "the Committee Representative shall serve as co-trustee of the Creditor Trust and shall have all authority, in conjunction with the Plan Agent, set forth in this Plan with respect to the Creditor Trust and its assets."; and,

WHEREAS, pursuant to Section 7.6.2 of the Plan, "[t]he Plan Agent, as co-trustee of the Creditor Trust, shall coordinate his efforts with the Committee Representative when undertaking any action that affects any Estate Property, including without limitation, any objections to Claims or any causes of action, including without limitation, Avoidance Actions."; and,

WHEREAS, pursuant to Section 7.8 of the Plan, the Creditor Trust was created; and

WHEREAS, pursuant to Section 7.8.1 of the Plan, "[o]n the Effective Date, the Estate Property shall be conveyed, assigned, transferred and remitted to the Creditor Trust on behalf of and for the benefit of its beneficiaries.... all Avoidance Actions or all other causes of action assigned under the Creditor Trust Agreement (collectively, "Avoidance and Other Actions") belonging to the Debtor or the Estate shall be irrevocably assigned, transferred and conveyed to the Creditor Trust free and clear of all claims, liens, encumbrances and interests subject to the term of this Plan. Any of the Debtor's rights, claims or Avoidance or Other Actions as of the Effective Date shall be transferred to the Creditor Trust and, to the extent

-4-

necessary to effectuate the foregoing, the Debtor shall join in any such transfer…. the Creditor Trustees shall be deemed the appointed representatives to, and may pursue, litigate, and compromise and settle any such rights, claims, or Avoidance and Other Actions, in accordance with the best interests of and for the benefit of the beneficiaries of the Creditor Trust."; and

WHEREAS, pursuant to Section 7.8.4 of the Plan, "[a]fter the Effective Date, the Creditor Trustee shall have the exclusive right to commence and to continue the prosecution of all pending Avoidance Actions and other causes of action belonging to the Creditor Trust;" and

WHEREAS, pursuant to Section 7.8.6 of the Plan, "[t]he Creditor Trust acting through the Creditor Trustee, shall have the full power and authority to prosecute, compromise or otherwise resolve any and all Avoidance and Other Actions and distribute the proceeds in accordance with the Creditor Trust Agreement."; and

WHEREAS, pursuant to Art. 4, Section (B)(2) of the Disclosure Statement, the Debtor asserts, and those Teleflex Entities which are defendants in the D&O Suit agree, that the D&O Suit is a shareholder derivative action and that the causes of actions set forth therein are property of the Debtor's estate; and

WHEREAS, pursuant to the Section 7.4 of the Plan, only the Debtor, the Plan Agent and/or the Committee Representative have the authority to prosecute, compromise or otherwise resolve the D&O Suit; and

WHEREAS, the Effective Date for the Plan was April 13, 2006,

WHEREAS, on April 18, 2006, the Committee Representative filed a Complaint (the "Complaint") initiating adversary proceeding number 06-03352, styled *Joseph Myers, as Committee Representative of Dexterity Surgical, Inc. v. Edward Weck Incorporated d/b/a Weck, Teleflex Incorporated, Weck Closure Systems, LLC and Pilling Weck Incorporated* (the

PHLEGAL: #1964785 v2 (1641d02!.DOC) 113934-30

"Adversary Proceeding"), seeking, among other things, the return of certain alleged transfers of property from the Debtor to the defendants pursuant to Chapter 5 of the Bankruptcy Code in the amount of $337,659.00 (the "Adversary Claim"); and

WHEREAS, on July 21, 2006, the Teleflex Entities that are named as defendants in the Complaint (the "Teleflex Adversary Defendants") filed an Answer denying any and all liability to the Debtor or any other person for the claims asserted in the Complaint and asserting affirmative defenses against the Debtor; and

WHEREAS, the Committee Representative believes that he has valid claims against the Teleflex Adversary Defendants in the Adversary Proceeding, and the Teleflex Adversary Defendants believe that they have valid defenses to the Committee Representative's Adversary Claim; and

WHEREAS, the Committee Representative has thoroughly investigated the D&O Suit and underlying causes of action and has determined that the D&O Suit raises shareholder derivative claims that are property of the Debtor's estate; and

WHEREAS, the Committee Representative has determined that unless a settlement of the D&O suit is effectuated, the D&O litigation should proceed; and

WHEREAS, the Committee Representative has concluded that after review of the D&O Suit and extensive settlement discussions, the terms and conditions of the within Stipulation are in the best interest of the Debtor and its creditors and the claims against the Teleflex Entities in the D&O Suit should be settled; and

WHEREAS, in order to settle and resolve the causes of action set forth in the Adversary Proceeding and the D&O Suit against the Teleflex Entities (collectively, the "Claims") without the need for the expense, delay and uncertainty associated with litigation, and

-6-

without admitting the truth or validity of any allegation made by either Party, the Parties have agreed to resolve this matter without litigation and on the terms set forth herein; and

**WHEREAS**, the Parties hereto wish to settle all disputes between them upon the following terms and conditions.

**NOW, THEREFORE**, in consideration of the premises and mutual covenants contained herein and other valuable consideration, the receipt of which is hereby acknowledged, it is stipulated and agreed by and between the Parties, as follows:

1.     The recitals set forth above are incorporated herein by reference.

2.     The Committee Representative shall file a motion to approve this Agreement pursuant to Rule 9019 of the Bankruptcy Code.

3.     Upon the later of ten (10) business days after entry of the Order by the Bankruptcy Court, substantially in the form attached hereto as **Exhibit A** (the "Order"), the date upon which the Order becomes final and no appeals are pending and the time to file an appeal has expired (a "Final Order"), or the date all conditions in Paragraph 8 below have been fully satisfied, the Teleflex Entities shall pay the total sum of Two Hundred Thousand Dollars (US $200,000.00) (the "Settlement Amount") by certified or bank check made payable to Dexterity Surgical, Inc. and delivered to Arent Fox PLLC, Attn. Schuyler G. Carroll, 1675 Broadway, New York, NY 10019 as attorneys for the Committee Representative.

4.     Subject to and effective upon (i) the entry of a final, non-appealable Order approving this Agreement and (ii) indefeasible payment of the Settlement Amount in full to the estate of Dexterity Surgical:

(a)     the Plan Agent on behalf of himself, the Debtor, the Debtor's estate and the Creditor Trust, and the Committee Representative on behalf of himself, the Debtor, the

Debtor's estate and the Creditor Trust, shall withdraw, release, waive and dismiss, with prejudice any and all claims, causes of action, and any other obligation of any kind or nature, expressly including the causes of action set forth in the Adversary Proceeding and the D&O Suit, against the Teleflex Entities and each of their respective agents, affiliates, predecessors, subsidiaries, parent entities, members, managers, shareholders, employees, servants, officers, directors, attorneys, heirs, personal representatives, executors, administrators, successors and assigns of each of them;

        (b)      without limiting the foregoing provisions of this paragraph 4, the Plan Agent on behalf of himself, the Debtor, the estate and the Creditor Trust, and the Committee Representative on behalf of himself, the Debtor, the Debtor's estate and the Creditor Trust, voluntarily and knowingly, for himself, itself as well as each of their respective agents, affiliates, predecessors, subsidiaries, parent entities, members, managers, shareholders, employees, servants, officers, directors, attorneys, heirs, personal representatives, executors, administrators, successors and assigns of each of them (collectively, the "Dexterity Releasors"), do hereby remise, release and forever discharge the Teleflex Entities and their respective agents, affiliates, predecessors, subsidiaries, parent entities, members, managers, employees, servants, officers, directors, attorneys, heirs, personal representatives, executors, administrators, successors and assigns of each of them (collectively, the "Releasees"), from any and all manner of actions and causes of action, suits, debts, dues, accounts, sums of money, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, liabilities, judgments, executions, claims and demands whatsoever, known and unknown, at law or in equity, whether or not in existence on or before the date hereof, which the Plan Agent, the Committee Representative or any of the Dexterity Releasors ever had, now have, claims to have, or ever shall or may have against the

PHLEGAL: #1964785 v2 (1641d02!.DOC) 113934-30

Releasees arising from, relating to, or in connection with any matter, cause or thing from the beginning of time to the date of this Agreement, including without limitation the claims which were or could have been asserted in the Complaint, the matters described therein or injuries or damages therefrom and the claims which were or could have been asserted in the D&O Suit, the matters described therein or injuries or damages therefrom;

      (c)    in addition to the foregoing provisions of this paragraph 4, the Plan Agent, the Committee Representative and the Dexterity Releasors expressly agree that the foregoing expressly releases any and all claims that they may have against the Releasees including, but not limited to, a claim or claims for professional negligence, professional misconduct and/or breach of professional duty, breach of any warranty, for any alleged deceptive practices under any trade practices or consumer protection act or otherwise, for breach of any common law or statutory duty, or any other damages, whether direct, consequential or remote, under state or federal law, interest, attorneys fees, costs, any declaratory, equitable or other special relief, and all other extra-contractual and tortious causes of action; and

      (d)    in addition to the foregoing provisions of this paragraph 4, the Plan Agent, the Committee Representative and the Dexterity Releasors shall be expressly and permanently enjoined from taking any of the following actions on account of or respecting any such released, waived and or discharged claim, cause of action, expressly including the causes of action set forth in the Adversary Proceeding and the D&O Suit, against the Releasees and each of their respective agents, affiliates, predecessors, subsidiaries, parent entities, members, shareholders, managers, employees, servants, officers, directors, attorneys, heirs, personal representatives, executors, administrators, successors and assigns of each of them:

PHLEGAL: #1964785 v2 (1641d02!.DOC) 113934-30

(i)      commencing or continuing, in any manner or in any place, any action or proceeding, whether directly, derivatively or otherwise, against any of or all of the Releasees;

(ii)     enforcing, attaching collecting or recovering in any manner any judgment, award, decree or order against any of or all of the Releasees;

(iii)    creating, perfecting or enforcing any lien or encumbrance against any of or all of the Releasees or their respective property;

(iv)     asserting any setoff, right of subrogation or recoupment of any kind against any obligation due any of or all of the Releasees;

(v)      commencing or continuing any action, in any manner, in any forum that does not comply with or is inconsistent with provisions of the Agreement.

5.      Subject to and effective upon the later of the entry of a Final Order approving this Agreement or the date upon which all conditions in Paragraph 8 below have been fully satisfied, the Teleflex Entities shall withdraw, release, waive and dismiss, with prejudice any and all claims, causes of action, and any other obligation of any kind or nature, against the Debtor, the estate, the estate's professionals and each of their respective agents, affiliates, predecessors, subsidiaries, parent entities, members, managers, shareholders, employees, servants, officers, directors, attorneys, heirs, personal representatives, executors, administrators, successors and assigns of each of them, and hereby withdraw, release and waive with prejudice the right, if any, to file a claim against the Debtor's estate relating to the Settlement Amount pursuant to 11 U.S.C. § 502(h) and hereby agree to the expungement of any and all claims any of or all of the Teleflex Entities may have filed against the Debtor including, but not limited to, Proof of Claim Number 21.

PHLEGAL: #1964785 v2 (1641d02!.DOC) 113934-30

6.    This Agreement is a settlement and compromise of disputed claims and any payment made hereunder is not to be construed as an admission of any liability and is intended to fully resolve and settle all claims which exist, whether known or unknown at this time, which could have been asserted by the Debtor, the estate, the Plan Agent or the Committee Representative against the Teleflex Entities or Weck.

7.    This Agreement is made purely on a compromise basis in order to avoid further litigation and expense, and it is further agreed that the Parties do not admit liability to anyone.  It is expressly agreed and understood by all Parties hereto that the terms of this Agreement are for the purpose of compromising and settling all disputed claims without any Party admitting the validity of the other's claims.

8.    The Parties understand and acknowledge that this Agreement is subject to approval by the Court and that this Agreement shall not become final and binding upon the Parties until the entry by the Court or of an appellate court, where applicable, of a Final Order approving this Agreement, and the conditions below have been fully satisfied.  The Parties also agree that this Agreement and the Parties' obligations hereunder, including the payment by the Teleflex Entities of the Settlement Amount are expressly conditioned upon the Committee Representative, Plan Agent and the Creditor Trustees entering into and obtaining approval from the Court, of a settlement pursuant to a Final Order.  Such settlement shall fully resolve all claims against the remaining defendant officers and directors in the D&O Suit without any direct or indirect cost or expense to the Teleflex Entities.  Such settlement shall also contain releases in favor of such defendant officers and directors consistent in scope with those contained within this Agreement in favor of the Teleflex Entities.

9.      If this Agreement is not approved by the Court or the Court's order is reversed by a higher court, the Parties shall, to the extent reasonably practicable, reform and refile this Agreement in accordance with the Parties original intent.  If not reasonably practicable, then the Agreement shall become null and void.

10.     In the event that this Agreement shall become null and void pursuant to paragraph 9 hereof, neither the terms nor statements contained in this Agreement, any motion or motions filed seeking an order from the Court approving this Agreement, nor correspondence related to the negotiation, drafting or approval of this Agreement, shall be argued nor deemed to be an admission against either Party's interest in any litigation by and between the Parties.

11.     Each Party represents that it owns and has not assigned or otherwise transferred to any other person or entity all such Party's rights and claims as are being altered or otherwise affected by this Agreement.

12.     Each person signing this Agreement represents and warrants that he/she has been duly authorized and has the requisite authority to execute and deliver this Agreement on behalf of such Party and to bind his/her respective client(s) to the terms and conditions of this Agreement.

13.     The Parties represent and acknowledge that, in executing this Agreement, they do not rely and have not relied upon any representation or statement made by any Party or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise, other than as specifically stated in this Agreement.

14.     The Parties further declare that, in making this Agreement, they rely entirely upon their own judgment, beliefs and interest and the advice of their counsel (for whose

-12-

expense each shall be solely responsible) and that they have had a reasonable period of time to consider this Agreement.

15.    The Parties agree that each Party has reviewed this Agreement and that each fully understands and voluntarily accepts all the provisions contained in this Agreement. The Parties further agree that this Agreement was the product of negotiations between the Parties and that any rule of construction that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Agreement.

16.    The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning and not strictly for or against any of the Parties.

17.    Should any non-material provision of this Agreement be declared or be determined by any court of competent jurisdiction to be illegal, invalid or unenforceable, the legality, validity and enforceability of the remaining parts, terms or provisions shall not be affected thereby and said illegal, unenforceable or invalid part, term or provision shall be deemed not to be a part of this Agreement.  However, if the releases contained herein in favor of the Releasees are determined by a court of competent jurisdiction to be invalid, in whole or in part, then Teleflex Incorporated may, in its sole discretion, terminate this Agreement and shall receive a full refund of the Settlement Amount.

18.    This Agreement sets forth the entire agreement between the Parties and fully supercedes any and all prior agreements and understandings, written or oral, between the Parties pertaining to the subject matter hereof.

19.    No modification of this Agreement shall be binding or enforceable unless in writing and signed by the Parties.

-13-

20.     This Agreement shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the State of New York, without regard to the conflict of laws of the State of New York.  Each of the Parties hereby irrevocably consents to the jurisdiction of the Court with respect to any action to enforce the terms and provisions of this Agreement and expressly waives any right to commence any such action in any other forum.

21.     This Agreement may be executed in one or more counterparts, including by facsimile, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

**IN WITNESS WHEREOF**, the parties hereto, intending to be legally bound, have caused the Agreement to be duly executed as set forth below.


Dated:  September ___, 2006                    Randall K. Boatright, as Plan Agent


                                               **By:**_____


Dated:  September ___, 2006                    Joseph Myers, as Committee Representative of
                                               Dexterity Surgical, Inc.


                                               **By:**_____


Dated:  September ___, 2006                    Teleflex Incorporated


                                               **By:**_____

PHLEGAL: #1964785 v2 (1641d02!.DOC) 113934-30

Dated:  September __, 2006          Pilling Weck Incorporated

                                                    **By:**_____

Dated:  September __, 2006          Pilling Weck Incorporated, as successor to Weck Closure Systems LLC

                                                    **By:**_____

Dated:  September __, 2006          Pilling Weck Incorporated, as successor to Edward Weck Incorporated d/b/a Weck

                                                    By:_____

Dated:  September __, 2006          Pilling Weck Canada L.P.

                                                    By:_____

Dated:  September __, 2006          John Sickler

                                                    **By:**_____

PHLEGAL: #1964785 v2 (1641d02!.DOC) 113934-30