IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| DEXTERITY SURGICAL, INC.; fka | § | CASE NO: 04-35817 |
| LIFEQUEST MEDICAL, INC. | § | |
| Debtor(s) | § | |
| | § | CHAPTER 11 |

## MEMORANDUM OPINION

On April 29, 2002, Dexterity Surgical Inc. ("Dexterity"), Teleflex Inc. ("Teleflex"), and several board members and officers of Dexterity ("individual defendants") were sued in the 166th Judicial District Court of Bexar County, Texas, by Dexterity's minority shareholders. A Second Amended Complaint was filed on December 11, 2003. Dexterity is a public company incorporated in the State of Delaware with its principal office located in Houston, Texas. It engages in the distribution of medical devices.

The minority shareholders of Dexterity ("Plaintiffs") alleged that Teleflex, Dexterity's majority shareholder, took advantage of its controlling interest and caused Dexterity to act to benefit itself at the expense of Plaintiffs. The Complaint also alleged that the individual defendants breached their fiduciary duties to Plaintiffs by controlling the affairs of Dexterity solely to benefit the majority shareholder, Teleflex.[1] Specifically, Plaintiffs alleged that Teleflex, with the help of the individual defendants, seized control of Dexterity's two key assets and directed distribution of these assets to Weck Closure Systems, Inc. ("Weck"), a Teleflex subsidiary.

---

[1] According to Plaintiffs, the individual defendants had a close relationship with the CEO of Teleflex. After the individual defendants, allegedly, lost a significant portion of Teleflex's financial investment in Dexterity, Plaintiffs believe the individual defendants felt an obligation to act to return some value to Teleflex.

1

Plaintiffs also brought claims alleging that Teleflex and the individual defendants caused Dexterity to breach several contracts it had with Plaintiff Surgical Visions I, Inc. (SVI), an entity largely owned by the individual Plaintiffs.

The complaint contains the following causes of action: (1) fraud; (2) civil conspiracy; (3) intentional breach of fiduciary duty; (4) negligent breach of fiduciary duty; (5) breach of contract; and (6) tortious interference with contract. Counts (1) - (4) and (6) were brought on behalf of all Plaintiffs against the individual defendants and Teleflex (collectively "Defendants"). Count (5) was brought by SVI against Dexterity.

The state court suit was interrupted when, on April 19, 2004, Dexterity filed a petition for chapter 11 bankruptcy relief. Dexterity's First Amended Plan of Liquidation (the "Plan") was confirmed on March 2, 2005. On April 18, 2006, the Committee Representative of the Unsecured Creditors Committee of Dexterity Surgical, Inc. ("Committee Representative") filed an adversary complaint against Weck, Teleflex and related parties seeking, *inter alia*, the return of pre-petition and post-petition transfers made to Teleflex ("adversary proceeding").

On August 8, 2006, the Committee Representative filed a petition in intervention in the state court proceeding asserting that the state court suit is property of the Debtor's bankruptcy estate.[2] The state court abated the suit pending resolution of the bankruptcy case.

On September 7, 2006, the Committee Representative filed a motion for approval of compromise and settlement in the adversary proceeding. In his motion, the Committee Representative argued that the state court suit is a derivative suit and, as such, is property of the estate. Because both the state court suit and the adversary proceeding involve common parties, the Committee Representative believes it is appropriate to resolve the claims together. SVI,

---

[2] The Committee Representative also alleges that under the order confirming the Plan, he is the only party with standing to prosecute the claims asserted by Plaintiffs.

2

however, objected to the proposed settlement arguing that SVI's claims asserted in the state court complaint are not owned by the estate.

The Court held a hearing on November 15, 2006, on the Committee Representative's Application to Compromise. At the hearing, the Court entered a Case Administration Order treating the Application to Compromise as a complaint and SVI's opposition as an answer. A subsequent hearing was held on December 1, 2006, in which the Court entered an order staying the state court proceedings pending a determination of who owns the claims in the state court suit.

In determining who owns the claims in the state court suit, the Fifth Circuit has directed courts to look to state law and determine if the debtor could have raised these claims as of the commencement of the case. *In re Educators Group Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994). If the debtor could have raised these claims at the commencement of its case—that is, in these particular circumstances, if the claims are derivative to the corporation—the claims will belong to the estate. *Id.; See In re MortgageAmerica Corp.*, 714 F.2d 1266, 1276 (5th Cir. 1983). This Court must, therefore, evaluate whether the causes of action in the state court complaint are direct claims belonging to SVI or claims which should be brought in a derivative suit.

*Analysis*

Dexterity is a corporation formed and existing under the laws of the state of Delaware. Under Texas law, actions involving the internal affairs of a foreign corporation are governed by the law of the state of incorporation. *E.g. Alenia Spazio, S.p.A. v. Reid*, 130 S.W.3d 201, 211 (Tex.App.-Houston [14 Dist.] 2003, pet. denied). Therefore, Delaware law governs the analysis of the ability of the corporation to bring the causes of action in this proceeding.

SVI has alleged that its injury is primarily based on the director's and officer's breaches of fiduciary duty in controlling Dexterity and in working to benefit Teleflex, Dexterity's majority shareholder. Individual shareholders, however, often lack standing to bring breach of fiduciary duty claims. 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURe § 1821, n.1 (citing *Lewis v. Knutson*, 699 F.2d 230 (5th Cir. 1983)).

For a shareholder to bring an individual action, the shareholder must "allege either an injury which is separate and distinct from that suffered by other shareholders, or a wrong involving a contractual right . . . which exists independently of any right of the corporation."[3] *In re Ionosphere Clubs, Inc.*, 17 F.3d 600, 604 (2nd Cir. 1994) (applying Delaware law) (citing *Moran v. Household Int'l. Inc.,* 490 A.2d 1059, 1069 (Del. Ch), aff'd, 500 A.2d 1346 (Del. 1985)). In determining whether the injury is a shareholder specific injury, Delaware courts will look to whether the "other shareholders suffered the same injury [as the complaining shareholder] *in their role as shareholders.*" *Id.* (citing *Weinberger v. Lorenzo,* No. 10692, 1990 WL 156529, 1990 Del.Ch. LEXIS 169 (Del. Ch. Oct. 11, 1990)). If the shareholder cannot show that it suffered a separate and distinct injury, the shareholder may only bring a derivative claim on behalf of the corporation.

The Supreme Court of Delaware recently clarified its approach in determining whether a claim is direct or derivative. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d. 1031, 1033 (Del. 2004). The Court stated that whether a claim is direct or derivative "must turn *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing

---

[3] For example, a direct action may exist "where third parties contrived to destroy or circumvent the participatory or commercial rights of certain stockholders in a manner that does no injury to the corporation, as where directors contrived to exclude certain stockholders from voting, or from participating in an advantageous offer." *In re Ionosphere Clubs, Inc.*, 17 F.3d at 605-06 (citing *Rabkin v. Philip A. Hunt Chem. Corp.,* 547 A.2d 963, 969 (Del. Ch.1986)).

4

stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley,* 845 A.2d. at 1033. Prior to this holding, emphasis was placed on whether or not the shareholders suffered a "special injury." *E.g. In re Ionosphere Clubs, Inc.*, 17 F.3d 600 (2nd Cir. 1994). The Court in *Tooley* rejected the concept of "special injury." *Tooley*, 845 A.2d. at 1036. In place of "special injury," the Court accepted the approach of "[l]ooking at the body of the complaint and considering the nature of the wrong alleged and the relief requested, [to determine whether] the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation[.]" *Id.* (quoting *Agostino v. Hicks,* 845 A.2d 1110, 1122 (Del. Ch. 2004)); *See also In re Enron Corp. Sec. Derivative, & "ERISA" Litigation*, Nos. MSL-1446, Civ.A.H-01-624, Civ.A.H.-01-3645, Civ.A.H-03-862, 2005 WL 2230169, *2-3 (S.D. Tex. 2005) (discussing and applying the *Tooley* test).

Plaintiffs' Second Amended Complaint can be divided into three categories: (1) counts (I) through (IV) against the individual defendants and Teleflex, for fraud, civil conspiracy, intentional breach of fiduciary duty and negligent breach of fiduciary duty—all based on Teleflex's alleged seizure of Dexterity's two key assets; (2) count (VI) alleging that the individual defendants and Teleflex tortiously interfered with contracts between SVI and Dexterity Surgical; and (3) count (V), SVI's breach of contract claim against Dexterity.

*Counts (I) through (IV): fraud; civil conspiracy; intentional breach of fiduciary duty; negligent breach of fiduciary duty*

In claiming that counts (I) through (IV) are direct and not derivative, SVI has provided two arguments: (1) "claims of looting the assets of a corporation and the failure of directors to disclose material facts regarding corporate transactions state individual or direct causes of action" and; (2) "even if these facts also give rise to derivative claims, that does not mean that these facts do not also set forth direct claims. . . [and] [i]n such cases, plaintiffs are afforded the

5

opportunity to litigate whichever claims they so choose." SVI's Memo in Opposition to Sum. J. p.6 (citations omitted).

The Court finds SVI's first argument unpersuasive. While it is true that some actions of corporate looting and failure of disclosure may support a direct, rather than a derivative suit, this is not a concrete rule. As stated above, when applying Delaware law, the court should use the two part test articulated in *Tooley* in determining whether an action is direct or derivative. When the facts support such a claim, courts have held that failure to disclose and looting can be derivative actions. *E.g. In re Abercrombie & Fitch Co. S'holders Derivative Litig.*, 886 A.2d 1271, 1272 (Del. 2005) ("A consolidated derivative complaint on behalf of Abercrombie's shareholders alleged excessive compensation, corporate waste, and failure to disclose the total compensation of the [CEO]."); *In re J.P. Morgan Chase & Co. Shareholder Litigation*, 906 A.2d 808 (Del. Ch. 2005) (shareholders were not individually damaged by failure to disclose alleged no-premium offer of merger made by acquired corporation's CEO, as required for their breach of duty to disclose claim); *See e.g. Abraham v. Emerson Radio Corp.*, 901 A.2d 751 (Del. Ch. 2006) (a claim alleging that the controlling shareholders sold to a looter may be derivative); *Harris v. Carter*, 582 A.2d 222 (Del. Ch. 1990) (recognizing that a claim for looting may be derivative.). Claims of this type may be either derivative or direct. The characterization of the claim depends on the facts of each particular case. SVI has simply advanced an argument without providing support to show that these claims would, in fact, be direct.

This Court is equally unpersuaded by SVI's second argument. It is a well accepted principle that a direct and derivative action may be maintained out of the same set of facts. *See e.g. In re Louisiana-Pacific Corp. Derivative Litig.*, 705 A.2d 238, 240-41 (Del. Ch. 1997) (discussing the release of individual claims when derivative claims arising out of the same facts

6

were settled); *Grimes v. Donald*, 673 A.2d 1207, 1213 (Del. 1996) *overruled in part on other grounds* (citing PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS § 7.01, cmt. a  (Am. Law. Inst. (1992))) ("In some instances, actions that essentially involve the structural relationship of the shareholder to the corporation . . . may also give rise to a derivative action when the corporation suffers or is threatened with a loss."). SVI's mere recognition of this principle does not excuse it from proving that it individually suffered the alleged harm and that any recovery would properly belong to SVI. SVI must plead facts establishing a direct claim.

The Plaintiffs' Second Amended Complaint was admitted as an exhibit at the hearing on November 15, 2006. Accordingly, the Court will look to the Plaintiffs' Second Amended Complaint for an overview of the allegations against the Defendants. Even though SVI has failed to offer an argument supporting that these claims are direct, the Court will evaluate these allegations against the two-part test articulated in *Tooley*. *Tooley* 845 A.2d. at 1033.

In the Second Amended Complaint, Plaintiffs alleged that the improper actions of Defendants began when Dexterity engaged in a search for a new distribution partner after losing its distribution agreement for its key assets. Plaintiffs characterized this search as "illusory" asserting that individual defendants orchestrated that the distribution agreement would be directed to Weck, which is owned by Teleflex, the majority shareholder of Dexterity Surgical, regardless of any other more profitable offers. Specifically, Plaintiffs stated that "countless highly qualified companies aggressively sought to obtain the distribution rights to the [key assets], often on quantified terms far more favorable to Plaintiffs and DEXTERITY SURGICAL [than the agreement signed with Weck]." Sec. Am. Compl. ¶ 5.

As a result of the distribution agreement with Weck, Plaintiffs asserted that "the Individual Defendants did wrongfully confer great value upon TELEFLEX at the expense of Plaintiffs and DEXTERITY SURGICAL." *Id*. at ¶ 5.

Plaintiffs further asserted that after Weck began fulfilling its duties under the distribution agreement, Teleflex found it would be more profitable for it to sell a product which competed with Dexterity Surgical rather than the one covered by the distribution agreement. Therefore, Plaintiffs alleged that Teleflex and the individual defendants caused Dexterity to revise its agreement with Weck thereby waiving Weck's obligations under the distribution agreement.

According to Plaintiffs' Second Amended Complaint, "the harm caused by the Weck contract modification" was recognized by Dexterity Surgical in its SEC filings:

> The filing stated that DEXTERITY SURGICAL: recognized impairments of approximately $10,400,000 on licensed technology rights for the [key assets] due to the lack of expected future cash flows, specifically the reduced minimum purchase guarantees under the Weck agreement.

*Id.* at ¶ 41. (formatting omitted).

The Court notes there is a recurring theme in Plaintiffs' allegations regarding Teleflex's alleged seizure of Dexterity's key assets: Dexterity suffered injury.

Under *Tooley*, the Court must consider two questions in evaluating whether this is a direct or a derivative cause of action: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually?) *Tooley* 845 A.2d. at 1033.

The Second Circuit, applying Delaware law, was faced with very similar claims in *In re Ionosphere Clubs, Inc. v. Am. Nat'l. Bank & Trust Co. of Chicago*, 17 F.3d 600 (2nd Cir. 1994). In *Ionosphere Clubs*, Debtor and Continental Airlines had been jointly owned by Texas Air. *Id.* at 602. Plaintiffs alleged that this joint ownership caused conflicted management which resulted

8

in "intercorporate transactions" through which valuable assets were transferred from Debtor to Continental (and other affiliated entities) for inadequate consideration. *Id.* Debtor attempted to enter into a settlement agreement to resolve these claims. *Id.* at 603. The preferred shareholders objected stating that their claims were contractual entitlements that Debtor was unable to perform because of its insolvency created by the intercorporate transactions. *Id.*

In support of their belief that the claims were direct and not derivative, Debtor's shareholders argued that Texas Air, the common shareholder between Debtor and Continental, was not harmed because, "it merely transferred property from one pocket to another." *Id.* at 604. The Court rejected this argument and focused on injury resulting from Texas Air's "*role as a shareholder.*" *Id.* at 604-05 (citing *Weinberger v. Lorenzo*, No. 10692, 1990 WL 156529 (Del. Ch. Oct. 12, 1990)). In its capacity as a shareholder of Debtor, the Court concluded that the shareholders bringing the action did not suffer any injuries separate and distinct from Texas Air, "even though in another role, [Texas Air] may have recouped the injuries." *Id.* at 605.

The Court finds the principles from *Ionosphere Clubs* instructive in the current proceeding. Teleflex was the majority shareholder of Dexterity as well as the owner of Weck. Like Texas Air, although Teleflex and the individual defendants may have gained a benefit from their alleged self-dealings, as shareholders of Dexterity Surgical, Defendants suffered the same type of injury as SVI.

To support a finding that this is a direct cause of action rather than a derivative claim, SVI must satisfy the first requirement of the *Tooley* test: who suffered the alleged harm (the corporation or the suing stockholders individually?). *Tooley* at 1033. Plaintiffs have failed to show how their alleged injury is distinct or separate from the injury of all the other shareholders

9

of Dexterity Surgical. To the contrary, Plaintiffs have highlighted the fact that Dexterity Surgical, itself, suffered a loss.

In addition, in their amended complaint, Plaintiffs argued that after the distribution rights were granted to Weck,[4] the individual Plaintiffs, K. Fadem and R. Evans attempted to expose the individual defendants' conduct by sending letters to Dexterity's Board urging the Board to address "improprieties and take corrective actions" regarding the alleged abuses of power by Teleflex and the individual defendants. Sec. Am. Compl. ¶ 32. The Court finds that, by their own admission, following the Weck distribution agreement, Plaintiffs clearly recognized the derivative nature of these allegations in that they urged the Board to take action.

The Court, therefore, finds that any recovery from the alleged self-dealing of Defendants should be received by the estate. Under the instruction of *Tooley*, when looking at the body of the complaint, considering the nature of the wrong alleged, and the relief requested, the Court finds that SVI has not shown that it can prevail without showing an injury to the corporation. *Tooley* at 1033. Indeed, the Plaintiffs' complaint is flush with references to the losses suffered by Dexterity. Plaintiffs did not suffer any losses different than those borne by all the shareholders. Accordingly, the Court finds that causes of action (I) through (IV) in the Plaintiffs' Second Amended Complaint are derivative.

Under *Educators Group,* the Fifth Circuit determined that "[w]hether a particular state cause of action belongs to the estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case." *Educators Group Health*

---

[4] Plaintiffs have also alleged that the agreement directing the key assets to Weck was a sham. Plaintiffs asserted that to allow Weck to take over distribution prior to an actual distribution agreement being signed, one of the individual defendants terminated Dexterity's sales force claiming that Weck would take over distribution as of July 3, 2000, even though no agreement had been signed. This action, Plaintiffs asserted, was ratified by the board when the board signed the distribution agreement with Weck in September 2000, but backdated it to make it appear as though it was executed on July 1, 2000. Plaintiffs further alleged the individual defendants falsified Dexterity's minutes from July 27, 2000, to show that unanimous consensus of the Board of Directors had been reached as to the distribution agreement with Weck.

*Trust*, 25 F.3d at 1284. The Court is to examine the nature of the injury for which relief is sought, and, if the Court finds that the debtor could have raised a claim for its direct injury, "then the cause of action belongs to the estate." *Id.* (citing *In re E.F. Hutton Sw Props. II, Ltd.,* 103 B.R. 808, 812 (Bankr. N.D. Tex. 1989)*; In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1153-54 (5th Cir. 1987)).

The Court has examined the nature of the injury alleged by SVI and has found that under Delaware law Dexterity is the proper party to assert these claims. SVI does not have standing to pursue these claims as a direct cause of action. These claims belong to the estate.

*Count (VI): tortious interference with contract*

SVI also brought, in the Second Amended Complaint, a claim for tortious interference with contract. This claim is against all defendants except for Dexterity. In the Second Amended Complaint, Plaintiffs asserted that SVI acquired a royalty agreement and promissory note pursuant to the March 18, 1999 merger of LifeQuest Medical, Inc. and Dexterity. Plaintiffs alleged that the Defendants caused Dexterity to cease making mandatory payments due to SVI under the contracts.

SVI asserts this resulted in direct harm to SVI, therefore, this should be SVI's direct claim. The Committee Representative, however, characterizes the harm from the breach of the contract as derivative asserting that the direct harm from Defendant's alleged actions was to the Debtor. Committee Rep's Mo. for Sum. J. ¶ 8. Any harm suffered by SVI, the Committee Representative claims, was indirect. *Id.*

In large part, the Court views SVI's claims in a similar light to claims that might be asserted by any holder of an unsecured claim when there is a derivative cause of action. The actions of the directors caused the corporation to be unable to honor the terms of the contract.

11

This inability gives rise to an unsecured claim. However, the law is unambiguous that an unsecured creditor may not pursue a derivative cause of action after a bankruptcy case has been commenced. *See In re MortgageAmerica Corp.*, 714 F.2d 1266, 1276 (5th Cir. 1983) (citing 4 COLLIER ON BANKRUPTCY ¶ 541.10[8] (15th ed. 1983)); *In re E.F. Hutton SW Props. II, Ltd.*, 103 B.R. 808, 812-13 (Bankr. N.D. Tex. 1989) (quoting *Pepper v. Litton*, 308 U.S. 295, 306-07 (1939) ("While normally that fiduciary obligation [(of a director to a corporation)] is enforceable directly by the corporation, or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation enforceable by the trustee.") Accordingly, the Court will examine the substance of the complaint to determine if SVI has set forth any basis that should remove its claim from this general rule.

In Texas, any party to a contract may bring a claim for tortious interference with contract against any third person "who wrongly induces another contracting party to breach the contract." *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995). "By definition, the person who induces the breach cannot be a contracting party." *Holloway,* 898 S.W.2d at 795.

In a corporate context, an officer or director may be found personally liable for tortious interference with contract if he "acted in a fashion so contrary to the corporation's best interest that his actions could only have been motivated by personal interest." *Id.* at 795. To establish a prima facia case, "the alleged act of interference must be performed in furtherance of defendant's personal interests." *Id.* "[T]he mere existence of a personal stake in the outcome, especially when any personal benefit is derivative of the improved financial condition of the corporation. . . cannot alone constitute proof that the defendants committed an act of willful or intentional interference [necessary to satisfy the elements of tortious interference]."[5] *Id.* (citing 3 LENMORE

12

M. ZAJDEL, FLETCHER CYCLOPEIDA OF THE LAW OF PRIVATE CORPORATIONS § 1001 (perm. rev. ed. 1986)).

An officer or director may escape liability by showing that he is acting "in good faith and believes that what he does is for the best interest of the corporation."[6] *Id.* (citing *Maxey v. Citizens Nat'l Bank*, 507 S.W.2d 722, 725 (Tex. 1974). This is the case even if the officers and directors recommend breaching a valid contract. *Id.* (citing *Maxey*, 507 S.W. 2d at 725).

In supporting their claim for tortious interference with contract, Plaintiffs stated that "Defendants breaches of their fiduciary duties to Plaintiffs also cause [sic] DEXTERITY SURGICAL to cease making mandatory payments to SURGICAL VISIONS pursuant to the Royalty Agreement" and "Defendants' wrongful acts as alleged herein caused DEXTERITY SURGICAL to fail to pay Plaintiff SURGICAL VISIONS money due it pursuant to the Promissory Note and thus materially breach that agreement." Sec. Am. Compl. ¶¶ 47, 49.

Plaintiffs do not specify what particular breaches of fiduciary duty or wrongful acts precipitated the alleged contract breach. Rather, Plaintiffs incorporate their allegations as averred in supporting Counts (I) through (IV) in the Second Amended Complaint. These alleged breaches of fiduciary duties, however, relate to the allegedly bogus distribution agreement

---

[5] The elements for tortious interference with contract are: (1) the existence of a contract subject to interference; (2) the occurrence of an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred. *Holloway*, 898 S.W.2d at 795-96 (citing *Browing-Ferris Indus. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993)). It is the second element which becomes problematic in a corporate context when a third party alleges tortious interference of contract against officers or directors of a corporation which is party to the contract. *Id.*

[6] *Holloway* further stated the reason for this rule:

> Doing business through corporate structures is a recognized and necessary incident of business life. A party is usually able to abandon a disadvantageous but valid contract and be responsible for breach of contract only. Corporations would substantially be prevented from similarly abandoning disadvantageous but valid contracts, and from securing related business advice, if the officers and employees who advised and carried out the breach had to run the risk of personal responsibility in an action for personal interference with the contract.

*Holloway,* 898 S.W.2d at 795 (citing *Wampler v. Palmerton,* 250 Or. 65, 439 P.2d 601, 606 (1968)).

13

granting distribution rights to Teleflex.  Plaintiffs fail to demonstrate how these allegations also support SVI's claim against Defendants for tortious interference with contract as to a contract between SVI and Dexterity.

Additionally, according to SVI's own statement in its motion filed opposing the settlement, the breach of contract saved Dexterity approximately two million dollars. SVI's Memo. in Opposition p. 2.  This statement is inconsistent with a tortious interference with contract claim against Defendants.  SVI must show that Defendants acted so contrary to Dexterity's best interest that the Court could find that Defendants' actions were purely personally motivated. *Holloway,* 898 S.W.2d at 795

This Court has repeatedly recognized that the Fifth Circuit instructs courts to the look to substance of pleadings rather than the labels stated in pleadings in determining what relief the movant seeks. *See Armstrong v. Capshaw, Goss & Bowers,* 404 F.3d 933, 936 (5th Cir. 2005) (noting district courts must determine the true nature of a pleading by its substance, rather than its labels and stating because movant's "motion to amend his complaint sought to justify his status as an intervenor in federal court, the district court properly treated it as a motion for leave to intervene.") (citing *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (*en banc*) ("[W]e have oft stated that 'the relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label'") (quoting *Bros. Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 606 (5th Cir. 1963)).  Similarly, the Fifth Circuit has ruled that a "motion for reconsideration," which is not recognized under the Federal Rules, was properly treated as a motion to alter or amend or a motion for relief from judgment. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).  While the foregoing deals with titling pleadings, the Court finds the same principle applicable to SVI's claim.

In Delaware, it is an established principle that "in determining whether a claim is derivative or direct in nature, [courts] must look to the nature of the wrongs alleged in the body of the plaintiffs' complaint, not plaintiffs' characterization or stated intention." *Litman v. Prudential-Bache Props., Inc.*, 611 A.2d 12, 15 (Del. Ch. 1992) (citing *Lipton v. News Int'l Pic.*, 514 A.2d 1075, 1078 (Del. 1986)); *Kramer v. W. Pac. Indus.*, 546 A.2d 348, 353 (Del. 1988) (the Court determined whether the plaintiff's complaint stated a direct or derivative cause of action based on the allegations in the complaint, not plaintiffs' characterization of its claims); *Dieterich v. Harrer*, 857 A.2d 1017, 1027 (Del. Ch. 2004) (citing *Agostino*, 845 A.2d at 1121) ("a claim is not 'direct' simply because it is pleaded that way. . . the court must look to all the facts of the complaint and determine for itself whether a direct claim exists.").

Plaintiffs have styled their complaint as including a claim for tortious interference with contract. This alleged interference, Plaintiffs assert, caused a direct injury to SVI. The Court, however, is not bound by Plaintiffs' characterization of their claim. The allegations in the Second Amended Complaint do not demonstrate any basis on which the Court can conclude that there are *bona fide* claims for tortious interference. At best, the allegations are merely a clever restatement of a claim for breach of fiduciary duty. Plaintiffs may not proceed with their tortious interference claim.

*Count (V): breach of contract*

The fifth count in the Second Amended Complaint was brought by SVI against Dexterity for a breach of contract. According to the Committee Representative, Dexterity was dismissed as a defendant in the state court lawsuit. SVI has not disputed this. The Committee Representative asserts that SVI is now enjoined from bringing this claim pursuant to § 9.1 of the confirmed plan. Section 9.1 states:

> As of the Effective Date, except as provided in the Confirmation Order, all entities shall be precluded from asserting against the Liquidating Debtor, its Estates, or the Plan Agent or its employees or agents, and the Plan Agent in its role as officer and director or in any other capacity of the Liquidating Debtor, any claims, debts, rights, causes of action, liabilities, or equity interests relating to the Debtor or Liquidating Debtor based upon any act, omission, transaction, or other activity of any nature that occurred prior to the Effective Date.

The Effective Date is defined as the "date on which the Debtor shall file a Notice of Effective Date which shall occur no more than 15 days following the closing of the sale of License Rights contemplated by Article 5 of the Plan." First Am. Plan § 1.1.31. The Order confirming the First Amended Plan was signed on March 2, 2005. Dexterity filed its Notice of Effective Date on April 13, 2006 (docket no. 31). SVI has not filed a proof of claim in this proceeding. Under 11 U.S.C. § 1141, the provisions of a confirmed plan are binding. 11 U.S.C. § 1141. SVI is, therefore, barred under the Plan from commencing a direct action against Debtor.

*Conclusion*

The Court finds SVI does not have standing to pursue the allegations in its complaint. The exclusive right to settle the claims made in the complaint belongs to the Committee Representative. A separate judgment will issue.

Signed at Houston, Texas, on March 15, 2007.

MARVIN ISGUR
United States Bankruptcy Judge